WALWORTH COUNTY, Appellant, v. HARTWELL, Respondent.*

*No. 217.   Argued November 27, 1973.—Decided February 5, 1974.*
(Also reported in 214 N. W. 2d 288.)

* Motion for rehearing denied, was costs, on April 2, 1974.

58

For the appellant there was a brief and oral argument by *William L. Seymour,* corporation counsel.

For the respondent there was a brief by *Robert D. Sundby* and *Herro, McAndrews & Porter, S. C.,* all of Madison, and oral argument by *Mr. Sundby.*

HANLEY, J. Two issues are presented on this appeal:

1. Does Hartwell have a valid nonconforming use of his property for motorcycle racing under the 1962 amended zoning ordinance?

2. Does the increase in the number of races, participants or spectators constitute a change in the use of the

premises or merely constitute an intensification of the original nonconforming use?

*Nonconforming use.*

The 1962 amended zoning ordinance does not permit motorcycle racing or similar activities in an agricultural district, the zone in which the respondent's farm lies. In order that a legal nonconforming use of the premises be established, it is necessary that it have been in existence since the date of the first ordinance adopted.

The first Walworth county zoning ordinance was adopted in 1946, but did not become effective in the town of LaFayette until December 7, 1948, when it was approved by the town board. It is conceded that the track R-1 was in existence for at least ten years before then. There is no issue concerning that fact. The use of track R-1 has, however, been abandoned since the adoption of the 1962 ordinance and respondent claims no nonconforming use thereon. The ownership of the property R-1 is with the Walworth County Motorcycle Club and consists of five acres.

Throughout at least the majority of this period of time during which the zoning ordinance and its subsequent amendments were in effect, the respondent either directly or indirectly was involved in the sponsorship of motorcycle racing on his property. Since these activities were proscribed by the zoning ordinances then in effect, unless they could qualify as an exception to said ordinance, such activities must cease. It is the respondent's position that he did so qualify in that his use of R-1 and R-2 from a period in time prior to 1948 to the present constituted a valid nonconforming use.

A nonconforming use is an active and actual use of land and buildings which existed prior to the commencement of the zoning ordinance and which has continued in the same or a related use until the present. *Gabe v. Cudahy* (1971), 52 Wis. 2d 13, 187 N. W. 2d 874.

While the right to continue a valid nonconforming use is protected, the burden is upon the property owner to prove by a preponderance of the evidence that the nonconforming use was in existence at the time the ordinance was passed. *Gabe v. Cudahy, supra.* Likewise, he must prove that the use of the property prior to the effective date of the ordinance was so active and actual that it can be said he has acquired a "vested interest" in its continuance. If the specific use was not so active and actual and was but casual and occasional, or if such a use was merely accessory or incidental to the principal use, then it cannot be said that the property owner had acquired a "vested interest" in the continuance of such a use and the status of nonconforming use will be denied.[1]

In the instant action there was limited testimony adduced as to the use of R-1 and R-2 prior to the effective date of the ordinance on December 7, 1948. Generally, the farm was devoted to agricultural activities until 1937 when track R-1 was established. Track R-1 was actively and actually used on a continuing basis until January 6, 1963. This was sufficiently established. The use of track R-2 prior to and subsequent to the effective date of the ordinance was not established.

In the early years of the track's existence, the majority of races participated in were on the kidney-shaped R-1 track. Such was the testimony of Mr. James W. Kruse who was a professional motorcycle racer and who participated twice yearly in motorcycle races on the Hartwell farm since 1946. His testimony was as follows:

"*Q.* Do you recall any specific years that you raced there?

"*A.* Yes, sir, it's easier to remember the most recent years of course, but I raced at Abell's Corners on at least, twice a year from '46 until 1968. . . ."

---

[1] *See: Sohns v. Jensen* (1960), 11 Wis. 2d 449, 105 N. W. 2d 818; *Gabe v. Cudahy, supra;* 1 Anderson, *American Law of Zoning,* pp. 371–373, secs. 6.27, 6.28; 2 Yokley, *Zoning Law and Practice,* p. 214, sec. 16–2.

Mr. Kruse also testified that in the early years most of the races were on the kidney-shaped track referred to as R-1. However, he did testify that there were other races which were conducted on the remainder of the property.

The respondent, Bruce Hartwell, testified with respect to the addition of motorcycle trails beyond the area occupied by the kidney-shaped track R-1. He stated that they were laid out by the Milwaukee Competition Club and Black Jackets. He testified that the use of the property by those groups was in the 1950's and 1960's, after the effective date of the first zoning ordinance in the town of LaFayette. There is no evidence that either of the above-named groups used the property prior to 1950. Hartwell's testimony as to group use was that organized motorcycle activity had taken place on the premises in question each year since at least December 7, 1948, the ordinance effective date. Hartwell did not, however, specify any motorcycle activities which had taken place on the R-2 track prior to the effective date of the zoning ordinance.

The trial court found that the nonconforming use of R-1 had been discontinued for at least one year. No other testimony concerning the pre-1948 use of R-2 was adduced.

In reviewing the above testimony, it is apparent that the respondent has proved at best that track R-2 was occasionally or sporadically used for motorcycle racing and related activities prior to December 7, 1948. It is apparent that the respondent adduced no evidence as to any "vested right" which might have resulted from the active and actual use of the property. Thus, any general prohibition against use of the property in such a manner could not be deemed unfair or confiscatory.

The court has consistently held that a mere occasional and incidental use does not qualify for protection as a legal nonconforming use. In *Gabe v. Cudahy, supra,*

we held that the sporadic removal of sand from land in question prior to 1957 (the effective date of the ordinance) did not qualify as a valid nonconforming use. We know of no reason why a contrary result would emanate herein. The respondent's use of track R-2 prior to the effect of the ordinance was so occasional and sporadic that it cannot be said that he had acquired a "vested interest" in the continuation of such a use. Thus, the nonconforming use status must as a matter of law be denied.

Since we have concluded the respondent's use of his premises in 1948 did not qualify as a nonconforming use, we do not reach the remaining issue presented on this appeal.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings not inconsistent with this opinion.

HEFFERNAN, J. *(dissenting).* Under the findings of fact, which were not contrary to the great weight and clear preponderance of the evidence, and as I view the findings, the use was nonconforming and, under the law applicable to such uses, may be continued. I would also conclude that the increase in the use of the property for cycle racing purposes did not alter the character of the use for zoning purposes.

I am authorized to state that Mr. Justice WILKIE joins in this dissent.