# WAUKESHA COUNTY, Plaintiff-Appellant,

v.

# Jack SEITZ, Defendant-Respondent.

Court of Appeals

*No. 86–0964. Argued February 26, 1987.—Decided May 13, 1987.*

(Also reported in 409 N.W.2d 403.)

On behalf of the plaintiff-appellant there was a brief and oral argument by *Thomas P. Farley,* assistant corporation counsel for Waukesha county.

On behalf of the defendant-respondent there was a brief and oral argument by *John C. Tritschler* of Milwaukee.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

NETTESHEIM, J.   Waukesha County appeals an order[1] dismissing its complaint alleging that Jack Seitz was illegally operating a marina and boat livery in violation of § 3.07(7)(K) and (L) of the Waukesha

---

[1]The notice of appeal recites that the appeal is from the "whole final judgment and order." A judgment was not entered by the circuit court. Rather, an order for judgment was entered. This is the final document dismissing the county's complaint and it is from this order that the appeal is actually taken.

County Shoreland and Floodland Protection Ordinance (1986).[2] The complaint sought a forfeiture judgment against Seitz and an order directing that he cease the activity.

The county argues that Seitz's activities were not nonconforming uses at the time that the ordinance became effective. Alternatively, the county argues that Seitz's subsequent use constituted an illegal expansion or enlargement of a nonconforming use. We conclude that the evidence supports the trial court's rulings that Seitz's use constituted a valid nonconforming use and that Seitz's subsequent use of the property did not constitute an illegal expansion or enlargement of a nonconforming use. Therefore, we affirm the circuit court's order dismissing the county's complaint.

[2]Waukesha County Shoreland and Floodland Protection Ordinance § 3.07(7)(K) and (L) provides:

(7) *Conditional uses permitted:* Subject to the foregoing, in addition to such uses enumerated in the district regulations, the following may be permitted as conditional uses in the districts specified, provided further that a public hearing shall be held and the location, building and site plans and plan of operation shall be submitted to and approved by the town plan commission and the county zoning agency:

. . . .

(K) *Legal non-conforming uses:* In any district as provided by section 3.15.

(L) *Marinas and boat liveries:* In any residential or business district subject to .the following:

1. Such use shall be located at least five hundred (500) feet from the nearest public bathing beach or park.

2. Such use is designed and constructed so as to not interfere with adjacent riparian owners' uses of the water for swimming, fishing, or boating; nor interfere or obstruct the public's free navigation.

In 1969, Seitz purchased a tract of land adjoining Pewaukee Lake in Waukesha county upon which he operated a business known as "Miller Brothers Resort." Seitz characterized this operation as a lake resort providing cottage rentals, boat livery, fuel and bait and minor motor repair. The cottage rentals, as compared to the marina activities, provided the greater portion of revenue during the initial year of operation.[3] In 1970, the Shoreland and Floodland Protection Ordinance became effective, zoning Seitz's property residential and rendering Seitz's use nonconforming.

During the seventeen years following the passage of the ordinance, the recreational activity on Pewaukee Lake increased dramatically. It is Seitz's response to this increased activity which serves as the basis for the county's complaint. Seitz's dry-docking facility has expanded from three to five boats in 1969 to the current level of fifty-four boats. In 1980, Seitz expanded his pier from the 1969 length of 80 feet to 120 feet. In 1981, Seitz again extended his pier to the current length of 192 feet. Today, Seitz is able to wet-dock up to thirty-five boats. In 1985, Seitz changed the name of the business to "Pewaukee Marina." The trial court concluded that Seitz's "marina activities" in 1970 constituted a valid nonconforming use and that the increase in these activities did not invalidate the nature of the use.

The first issue is whether Seitz had established a valid nonconforming use when the 1970 ordinance became effective. A nonconforming use is a use of land

---

[3]The exact figures regarding the revenue generated by Seitz's 1970 activities were unavailable due to a fire.

for a purpose not permitted in the district in which the land is situated. *See County of Sauk v. Trager,* 118 Wis. 2d 204, 224, 346 N.W.2d 756, 765 (1984). Land use qualifies as "nonconforming" if there is an active and actual use of the land and buildings which existed prior to the commencement of the zoning ordinance and which has continued in the same or a related use until the present. *Walworth County v. Hartwell,* 62 Wis. 2d 57, 60, 214 N.W.2d 288, 289–90 (1974). The property owner bears the burden to prove by a preponderance of the evidence that the nonconforming use was in existence at the time that the ordinance was passed. *Id.* at 61, 214 N.W.2d at 290. This burden also requires the property owner to show that the use was "so active and actual that it can be said he [or she] has acquired a 'vested interest' in its continuance." *Id.* If the use is characterized as merely casual and occasional or accessory or incidental to the principal use, then the use does not acquire a nonconforming status. *Id.*

The county does not dispute the trial court's findings that Seitz engaged in boat rentals and storage and fuel and bait sales in 1970. Rather, the county argues that these uses were merely incidental or accessory to the principal use of cottage rentals and, as a result, Seitz's "marina activities" did not rise to the level of a "vested interest." *See id.* In its decision, the circuit court correctly noted that Seitz was obligated to establish an "active and actual use" which existed prior to the enactment of the ordinance. The court then went on to factually determine that Seitz's property was a "recognized marina" at this point in time. The court described this activity as "active commercial use." We conclude that these findings are

supported by the evidence and are not clearly erroneous. *See* sec. 805.17(2), Stats.

This does not fully answer the inquiry on this issue, however, since we view the question of whether a given historical land use qualifies as a valid nonconforming use as involving the application of the trial court's factual findings to a legal standard. This process raises a question of law. *See Maxey v. Redevelopment Auth.,* 120 Wis. 2d 13, 18, 353 N.W.2d 812, 815 (Ct. App. 1984). When considering questions of law, we owe no deference to a trial court's decision. *Id.*

Nonetheless, we conclude that the trial court correctly held that Seitz's pre-ordinance activities gave him a vested interest in their continuance. Although these activities produced lesser revenues than those generated by Seitz's cottage rentals, this alone is not sufficient to disqualify the use from a vested right status. Such "piecemealing" of Seitz's activities is unrealistic in that it overlooks the true nature of the services he was providing. In fact, Seitz's business consisted of various small marina and resort related activities which, in combination, assisted the business' survival and gave the enterprise its true resort and marina flavor. This synergistic action of Seitz's business activities vested his interest in their continuance.

We recognize that the spirit of zoning is to restrict a nonconforming use and to eliminate such uses as quickly as possible. *City of Lake Geneva v. Smuda,* 75 Wis. 2d 532, 538, 249 N.W.2d 783, 787 (1977). This is reflected by the rule that the nonconforming use concept does not cover any activity simply because it takes place on the premises. *See, e.g., Sohns v. Jensen,* 11 Wis. 2d 449, 457–58, 105 N.W.2d 818, 822–23 (1960).

In *Sohns,* the supreme court held that an automobile repair garage owner was not, prior to the time of the zoning ordinance, engaged in operating an automobile wrecking yard so as to qualify the land use as a nonconforming use. There, the evidence indicated that the garage owner salvaged automobile parts only on a limited and occasional basis and in conjunction with the garage enterprise. The court noted that the garage owner did not show income from the sale of salvaged vehicles until six years after the ordinance became effective. The court concluded this limited salvage use by the garage owner was not sufficient to constitute a legal nonconforming use in an automobile salvage business.

Here, the trial court's findings establish that Seitz's pre-ordinance use of his property was not the limited, occasional and sporadic type present in *Sohns.* To the contrary, the court found Seitz's marina uses to be "active." This, we conclude, gave Seitz a vested interest in his marina and resort activity. Once a property owner has acquired a proprietary or "vested" interest in the use, the use will be protected from subsequent zoning elimination. Therefore, we affirm the trial court's conclusion that Seitz had proven a valid nonconforming use prior to the enactment of the county's Shoreland and Floodland Protection Ordinance.

Next, the county argues that Seitz's development of his pier facilities and enlargement of his dry-docking business constituted an illegal expansion of a nonconforming use. If an increase in volume, intensity or frequency of use is coupled with some element of identifiable change or extension, the enlargement will invalidate a legal nonconforming use. *See* 1 R. Anderson, *American Law of Zoning 3d* § 6.50 (1986). How-

117

ever, a mere increase in the volume, intensity or frequency of a nonconforming use is not sufficient to invalidate it. *Id.*

We also view this issue as presenting a mixed question of law and fact. We will not disturb the trial court's factual findings unless clearly erroneous. *See* sec. 805.17(2), Stats. However, we view the subsequent determination as to whether those facts constitute an illegal expansion of the use as a question of law involving the application of determined facts to a legal standard. Again, we decide such questions without deference to the trial court's decision. *Maxey,* 120 Wis. 2d at 18, 353 N.W.2d at 815.

The county points to the pier expansion as the identifiable change or extension rendering Seitz's activities illegal. Seitz obtained all necessary approvals from the Department of Natural Resources for his pier expansions. Sections 30.11 and 30.13(3), Stats., authorize a municipality, subject to approval of the Department of Natural Resources, to establish bulkhead and pierhead lines by ordinance. Seitz was not required to obtain county approval for the pier expansions because the county had not established these lines by the requisite ordinance. Because of this failure, Seitz argued, and the trial court agreed, that the county should not be permitted to utilize the pier expansion as a basis for challenging his use of the property.[4]

---

[4]Seitz also asserts that because the pier is located in an area separate from Seitz's land which is zoned residential, it should not be a factor relevant to the county's claim. We disagree. The pier involved in this case is an aquatic pier consisting of essentially an "H" pipe frame. The record indicates that the pier runs perpendicular to Seitz's land and is either connected to or rests upon Seitz's

Although we ultimately agree with Seitz that his pier expansion did not undo the validity of his nonconforming use, we reject his reasons as to why consideration of this expansion was improper. Chapter 30, Stats., regulating activities concerning navigable waters, is premised upon the public trust doctrine. *See State v. Bleck,* 114 Wis. 2d 454, 465–67, 338 N.W.2d 492, 497–98 (1983). This doctrine safeguards the interests of all members of the public in navigable waters. *Id.* at 466, 338 N.W.2d at 498. Statutory regulations concerning wharves and piers are designed to assure that public rights in navigable waters are protected, that the free flow of water is not interrupted, that land in the bed of the water is not formed and that obstructions of navigable waters are not created. *See* sec. 30.13(1)(a), (2) and (4), Stats. These interests are different from those served by zoning and nonconforming use regulations. The expansion of a pier may not violate any of the policy considerations of ch. 30, but may yet serve to constitute an illegal expansion of a nonconforming use. Therefore, we reject Seitz's claim that the pier expansion could not be a relevant consideration to the claim asserted by the county here.

■
We note, however, that whether this type of structural expansion invalidates a nonconforming use is expressly controlled by statute and ordinance, neither of which was alleged or proven in this case. Structural repairs or alterations up to fifty percent of the structure's fair market value are permitted by ordinance. *See* Waukesha County, Wis. Shoreland and

shoreline. With this physical connection to Seitz's property, the pier directly affects his land use and any possible expansion.

Floodland Protection Ord. § § 3.07(7)(K) and 3.15(2)(B)5 (1986).[5] Section 59.97(10)(a), Stats., has a similar repair or alteration marker.[6] The policy of these restrictions is to "encourage at least some improvement and

[5]Waukesha County Shoreland and Floodland Protection Ordinance § 3.15(2)(B) provides:

(2) *Classification and regulation:* For the purposes of administration, legal non-conformity shall be classified and regulated as follows:

. . . .

(B) *Non-conforming use of structures and lands:*

1. No such use shall be expanded or enlarged.

2. Upon petition to and approval of the county zoning agency, such use may be changed to another use provided the zoning agency determines that the new use would not result in a greater degree of non-conformity than the current use.

3. When any such use is discontinued for twelve (12) consecutive months or eighteen (18) cumulative months during a three-year period, any future use of the land or structure shall conform to the use regulations of the applicable district.

4. When a structure which houses such non-conforming use, is damaged to the extent of more than fifty (50) percent of its current fair market value, it shall not be restored for any use except in conformity with the applicable district regulations.

5. Total structural repairs or alterations to a structure housing a non-conforming use shall not exceed fifty (50) percent of the fair market value of the structure.

[6]Section 59.97(10)(a), Stats., provides:

An ordinance under this section shall not prohibit the continuance of the lawful use of any building or premises for any trade or industry for which such building or premises is used at the time such ordinances take effect, but the alteration of, or addition to, or repair in excess of 50% of its assessed value of any existing building or structure for the purpose of carrying on any prohibited trade or new industry within the district where such buildings or structures are located, may be prohibited. The continuance of the nonconforming use of a temporary structure may be prohibited. If such nonconforming use is discontinued for a period of 12 months, any future use of the building and premises shall conform to the ordinance.

modernization of nonconforming buildings at the expense of extending the life expectancy of nonconforming uses." 1 R. Anderson, *supra,* § 6.56, at 617. The record is devoid of any allegation or evidence indicating that Seitz's pier expansion has somehow violated these legislative markers.

To now hold that the pier expansion serves as the catalyst for the invalidation of Seitz's nonconforming use would undercut the intent behind the ordinance allowing some repair or alteration of structures involved in a legal nonconforming land use. We conclude that a violation of the statute or ordinance expressly regulating the alteration or repair of nonconforming use structures is required when a zoning authority claims that a structural change has resulted in a legal nonconforming use being impermissibly expanded. No such violation was alleged or proven in this case.

Consequently, we are left with a situation where there has been an increase in the volume of Seitz's marine activities and no proof of structural alterations or repairs in violation of any statute or ordinance. The increase in the volume and intensity of Seitz's use is attributable to nothing more than the increased recreational use of Pewaukee Lake and Seitz's response thereto by conducting his pre-ordinance activities on a larger scale. No identifiable change or extension in Seitz's use has been established. *See* 1 R. Anderson, *supra,* § 6.50. The character of the use remains unchanged. The trial court properly dismissed the county's action.

*By the Court.*—Order affirmed.