TIMOTHY F. CULLEN, Secretary Department of Health and SocialServices
You ask two questions concerning the establishment of community living arrangements in "residential zones," "residential areas" or "areas zoned for residential use" within the meaning of chapter 205, Laws of 1977.
One of your questions may be paraphrased as follows: Are community living arrangements which satisfy all other applicable statutory criteria entitled to locate in any zoning districts in which residential uses are expressly permitted, even though such areas are not zoned exclusively for residential use?
In my opinion, the answer is yes.
Chapter 205, section 1, Laws of 1977, provides as follows:
 Legislative purpose. The legislature finds that the language of statutes relating to zoning codes should be updated to take into consideration the present emphasis on preventing or reducing institutionalization and legislative and judicial mandates to provide treatment in the least restrictive setting appropriate to the needs of the individual. This change in emphasis has occurred as the result of recent advances in corrections, mental health and *Page 127 
social service programs. It is the legislature's intent to promote public health, safety and welfare by enabling persons who otherwise would be institutionalized to live in normal residential settings, thus hastening their return to their own home by providing them with the supervision they need without the expense and structured environment of institutional living. To maximize its rehabilitative potential, a community living arrangements should be located in a residential area which does not include numerous other such facilities. The residents of the facilities should be able to live in a manner similar to the other residents of the area. The legislature finds that zoning ordinances should not be used to bar all community living arrangements since these arrangements resemble families in all senses of the word except for the fact that the residents might not be related. The legislature also finds that deed covenants which restrict or prohibit the use of property for community living arrangements are contrary to the vital governmental purpose of achieving these goals. The legislature believes these matters of statewide concern can be achieved only by establishing criteria which restrict the density of community living arrangements while limiting the types of and number of facilities which can exist in residential neighborhoods having an appropriate atmosphere for the residents, thereby preserving the established character of a neighborhood and community.
Section 46.03(22), Stats., as created by chapter 205, section 2, Laws of 1977, provides, in part, as follows:
 COMMUNITY LIVING ARRANGEMENTS. (a) "Community living arrangement" means any of the following facilities licensed or operated, or permitted under the authority of the department: child welfare agencies under s. 48.60, group foster homes for children under s. 48.02(7) and community-based residential facilities under s. 50.01; but does not include day care centers, nursing homes, general hospitals, special hospitals, prisons and jails.
 (b) Community living arrangements shall be subject to the same building and housing ordinances, codes and regulations of the municipality or county as similar residences located in the area in which the facility is located.
. . . . *Page 128 
 (d) A community living arrangement with a capacity for 8 or fewer persons shall be a permissible use for purposes of any deed covenant which limits use of property to single-family or 2-family residences. A community living arrangement with a capacity for 15 or fewer persons shall be a permissible use for purposes of any deed covenant which limits use of property to more than 2-family residences. Covenants in deeds which expressly prohibit use of property for community living arrangements are void as against public policy.
With respect to such community living arrangements, chapter 205, section 10-12, Laws of 1977, established uniform criteria for the location of such facilities in counties, towns, villages and cities. Ordinarily, any such facilities which are licensed, operated or permitted under the authority of your department are entitled to locate in specified residential zones or areas, provided that they meet two criteria. First, the community living arrangement must be more than 2,500 feet from any other community living arrangement unless this distance requirement is reduced by municipal ordinance. See secs. 59.97(15)(a), 60.62, 60.74(9)(a),61.35 and 62.23(7)(i)1., Stats. Second, a municipality may prohibit the establishment of additional community living arrangements where the total capacity of all such community living arrangements within the municipality would exceed twenty-five, or one percent of the municipality's population, whichever is greater. See secs. 59.97(15)(b), 60.74(9)(b), 61.35
and 62.23(7)(i)2., Stats. This prohibition can also be imposed on a ward by ward basis in cities. Sec. 62.23(7)(i)2., Stats.
Depending upon their capacity, community living arrangements which meet the applicable statutory criteria may be established in specified residential districts. Ordinarily, community living arrangements having a capacity to serve eight or fewer persons are "entitled to locate in any residential zone . . . ." Secs. 59.97(15)(c), 60.63(4) and 62.23(7)(i)3., Stats. Community living arrangements which have a capacity to serve from nine to fifteen persons are "entitled to locate in any residential area except areas zoned exclusively for single-family or 2-family residences . . . [and are] . . . entitled to apply for special zoning permission to locate in those areas." Secs. 59.97(15)(d),60.63(5) and 62.23(7)(i)4., Stats. Finally, community living arrangements having a capacity to serve more than fifteen persons are "entitled to apply for special zoning permission to locate inareas zoned for residential use." Secs. *Page 129 
59.97(15)(e), 60.63(6) and 62.23(7)(i)5., Stats. "Special zoning permission" includes, but is not limited to "special exception, special permit, conditional use, zoning variance, conditional permit and words of similar intent." Secs. 59.97(15)(g), 60.63(8) and 62.23(7)(i)7., Stats. Also see sec. 61.35, Stats.
Preliminarily, I am of the opinion that the phrases "residential zone," "residential area" and "areas zoned for residential use" have the same meaning.
 In construing a statute, the entire section and related sections are to be considered in its construction or interpretation. State v. Phillips, 99 Wis.2d 46, 50, 298 N.W.2d 239 (Ct.App. 1980). Furthermore, a statute should be construed to give effect to its leading idea, and the entire statute should be brought into harmony with the statute's purpose. Pella Farmers Mutual Insurance Co. v. Hartland Richmond Town Insurance Co., 26 Wis.2d 29, 41, 132 N.W.2d 225 (1965). Sections of statutes relating to the same subject matter must be construed in pari materia. Jung v. State, 55 Wis.2d 714, 720, 201 N.W.2d 58 (1972).
State v. Clausen, 105 Wis.2d 231, 244, 313 N.W.2d 819 (1982). The purpose of the statutes is to allow community living arrangements to locate in certain types of zoning districts which are residential in nature. There is no indication anywhere that the Legislature intended that such residential districts have three different characteristics, depending upon the size of the community living arrangement. Applying the rules of construction contained in Clausen, I, therefore, conclude that the terms "residential zones," "residential areas" and "areas zoned for residential use" are synonymous.
In determining whether these terms refer only to zoning districts which are primarily residential in nature as opposed to zoning districts in which residential uses are expressly permitted, certain rules of construction apply: "In situations where one of several interpretations of a statute are possible, this court `"must ascertain the legislative intention as disclosed by the language of the statute in relation to its scope, history, context, subject matter, and the object intended to be remedied or accomplished."'" State ex rel. First Nat. Bank Trust v. Skow, 91 Wis.2d 773, 779, 284 N.W.2d 74 (1979) (citation omitted). In addition, "[u]nder the accepted law of Wisconsin and of other jurisdictions, remedial statutes should be liberally construed `to suppress the mischief and advance the remedy *Page 130 
which [the statute] intended to afford.'" Madison v. Hyland, Hall Co., 73 Wis.2d 364, 373, 243 N.W.2d 422 (1976). It is also well-settled that a statute should be construed so as to avoid unreasonable or absurd results. State v. Phillips, 99 Wis.2d 46,51, 298 N.W.2d 239 (Ct.App. 1980); Braun v. Wisconsin ElectricPower Co., 6 Wis.2d 262, 268, 94 N.W.2d 593 (1959).
The thrust of chapter 205, Laws of 1977, is to assure that community living arrangements having a capacity to serve eight or fewer persons are treated as a single or two-family unit for zoning purposes, while community living arrangements having a capacity to serve from nine to fifteen people are to be treated as a multi-family (more than two) unit for zoning purposes.
A construction which permits community living arrangements of eight or fewer residents to locate in any zoning district where one or two family residences are permitted uses and which permits community living arrangements serving nine to fifteen residents to locate in any zoning district where multi-family residences are permitted accomplishes a number of results.
First, it effectuates the legislative purpose of treating community living arrangements like families for zoning purposes, since the Legislature has found that "these arrangements resemble families in all senses of the word except for the fact that the residents might not be related." Ch. 205, sec. 1, Laws of 1977. Second, "in harmony with the elementary principle of property law favoring the free and unrestricted use of land," it accomplishes the remedial purpose of "enabl[ing] `persons who otherwise would be institutionalized to live in normal residential settings.'"Crowley v. Knapp, 94 Wis.2d 421, 433 n. 1, 288 N.W.2d 815 (1980). Third, it tends to avoid absurd or unreasonable results by precluding fact battles over the characteristics of various zoning districts and by precluding municipalities from attempting to prohibit the establishment of community living arrangements by denominating certain districts as commercial or industrial even though substantial residential uses are permitted in those districts.
Such a construction is also in accord with decisions from other states which treat the residents of community arrangements as families for zoning purposes. See, e.g., State ex rel. Thelen v.City of Missoula, 168 Mont. 375, 543 P.2d 173 (1975); Berger v.State, 71 N.J. 206, 364 A.2d 993, 1003 (1976); City of WhitePlains v. Ferraioli, *Page 131 34 N.Y.2d 300, 313 N.E.2d 756, 357 N.Y.S.2d 449 (1974). See alsoLeland Acres, Etc. v. R. T. Partnership, 106 Mich. App. 790,308 N.W.2d 648, 652 (1981).
Applicable rules of statutory construction and pertinent authorities from other jurisdictions favor a construction which permits community living arrangements which have a capacity to serve eight or fewer persons and which meet all other statutory criteria to locate in any zoning district where single or multi-family residences are permitted. Similarly, community living arrangements having a capacity to serve from nine to fifteen persons are entitled to locate in any zoning district where multi-family residences are permitted. By the same token, community living arrangements which have a capacity to serve more than fifteen persons are entitled to apply for special zoning permission to locate in any zoning district where single or multi-family uses are permitted.
Your remaining question may be paraphrased as follows: Are community living arrangements which satisfy all other applicable statutory criteria entitled to locate in exclusive agricultural zoning districts?
In my opinion, the answer is no. However, community living arrangements may seek special zoning permission to locate in such areas if permitted by local ordinance.
Section 91.75 provides, in part, as follows:
 Ordinance standards. A zoning ordinance shall be deemed an "exclusive agricultural use ordinance" if it includes those jurisdictional, organizational or enforcement provisions necessary for its proper administration, if the land in exclusive agricultural use districts is limited to agricultural use and is identified as an agricultural preservation area under any agricultural preservation plans adopted under subch. IV and if the regulations on the use of agricultural lands in such districts meet the following standards which, except for sub. (4), are minimum standards:
 (1) Except as provided under subs. (2) and (6), the minimum parcel size to establish a residence or a farm operation is 35 acres.
 (2) The only residences allowed as permitted uses are those to be occupied by a person who, or a family at least one member of which, earns a substantial part of his or her livelihood from farm *Page 132 
operations on the parcel, or is a parent or child of the operator of the farm. Preexisting residences located in areas subject to zoning under this section which do not conform to this paragraph may be continued in residential use and may be exempted from any limitations imposed or authorized under s. 59.97(10).
 (3) No structure or improvement may be built on the land unless consistent with agricultural uses.
As has been explained, in most circumstances, the residents of a small community living arrangement should be treated as a family for zoning and land use purposes. Ch. 205, sec. 1, Laws of 1977. Also see Crowley, 94 Wis.2d at 432-36. However, under section 91.75(2), residential uses in exclusive agricultural districts are treated as non-conforming uses, except that a county may exempt them from the limitations contained in section 59.97(10).
Residential uses are not permitted in exclusive agricultural zoning districts unless a person residing on the premises earns a substantial part of his or her livelihood from farm operations or is a parent or child of the operator of the farm. Sec. 91.75(2), Stats. Although it can be argued that a community living arrangement should also be permitted in the unlikely event that a person living on the premises meets these criteria, I am of the opinion that the type of residential use permitted by section91.75(2) is the functional equivalent of a farmhouse, and is incidental to the principal use of the premises, which is required to be an "agricultural us[e]." Sec. 91.75(3), Stats.Compare Walworth County v. Hartwell, 62 Wis.2d 57, 61,214 N.W.2d 288 (1974).
The terms "residential zones," "residential areas" and "areas zoned for residential use" should be construed in their ordinary and accepted sense. Sec. 990.01(1), Stats.; State ex rel. B'naiB'rith F. v. Walworth County, 59 Wis.2d 296, 307, 208 N.W.2d 113
(1973). In their commonly accepted sense, it is my opinion that these terms refer to the principal use of the property. Cf.,Hartwell, 62 Wis.2d at 61. By its very name, the phrase "exclusive agricultural use" connotes a principal use which is agricultural, as opposed to residential. Sec. 91.75(intro.), Stats. Areas zoned exclusive agricultural, therefore, are not "residential zones," "residential areas" or "areas zoned for residential use" within the meaning of chapter 205, Laws of 1977. *Page 133 
Nevertheless, community living arrangements may be entitled to locate in exclusive agricultural zoning districts under some circumstances. Section 91.75(5) provides as follows:
 Special exceptions and conditional uses are limited to those agricultural-related, religious, other utility, institutional or governmental uses which do not conflict with agricultural use and are found to be necessary in light of the alternative locations available for such uses. The department shall be notified of the approval of any special exceptions and conditional uses in areas zoned for exclusive agricultural use.
This broad language is sufficient to permit the establishment of community living arrangements in exclusive agricultural districts if the alternative locations for such uses in other zoning districts are insufficient. The establishment of community living arrangements in exclusive agricultural districts is, therefore, dependent upon the terms and provisions contained in local ordinances.
In conclusion, community living arrangements which meet all other applicable statutory criteria and which have the appropriate capacity are entitled to locate in zoning districts where residential uses are permitted. They are not entitled to locate in exclusive agricultural zoning districts because the only new uses permitted in such districts are agricultural. They can, however, apply for special zoning permission to locate in exclusive agricultural zoning districts under the terms and conditions specified in local ordinances.
DJH:FTC *Page 134