WAUKESHA COUNTY, Plaintiff-Respondent,

v.

PEWAUKEE MARINA, INC., Pewaukee Marina Sales, Inc., Lake Seitz Investment Company, Inc., Pewaukee Marina Boat Rental, Inc., Wonderful World of Crystals and John A. Seitz, Defendants-Appellants.†

Court of Appeals

*No. 93–1998. Submitted on briefs June 24, 1994.—Decided August 10, 1994.*

(Also reported in 522 N.W.2d 536.)

†Petition to review denied.

On behalf of the defendants-appellants, the cause was submitted on the briefs of *James W. Hammes* of *Cramer, Multhauf & Hammes* of Waukesha.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *William J. Domina*, assistant corporation counsel.

Before Anderson, P.J., Brown and Nettesheim, JJ.

BROWN, J. This case concerns John A. Seitz' expansion or enlargement of his marina on Pewaukee Lake, a nonconforming use under the Waukesha County ordinances. Seitz contends that the county ordinance making enlargement or expansion of nonconforming uses one of the grounds for invalidating the use is void since the Wisconsin statutes do not empower the County to invalidate uses on that ground. Seitz also contends that his expansion or enlargement is valid because the nonconforming use was not in any way "changed"; it was only improved. Because the County had the implied power to enact the ordinance it did, and because expansion and enlargement changed the use, we reject Seitz' arguments and affirm.

This is the second time that a dispute between Seitz and the County has come before us. In the first case, *Waukesha County v. Seitz,* 140 Wis. 2d 111, 409 N.W.2d 403 (Ct. App. 1987) (*Seitz I*), we held that the extension of Seitz' marina pier was simply an improvement of a legal nonconforming use to accommodate increased boater traffic; it did not change the use. Since then, Seitz has added a retail store and a place for lounging and entertainment. Further, he sells boats, boat lifts and piers. The County contended that the modifications changed Seitz' enterprise from a dock providing secure moorings for boats and storage of

20

boats to one providing many new services. A jury determined that the additions constituted new uses since the prior litigation of September 13, 1985. The trial court agreed and ordered that Seitz' nonconforming use was invalidated. Seitz then brought this appeal.

Seitz first argues that § 3.15(2)(B)1 of the WAUKESHA COUNTY SHORELAND AND FLOODLAND PROTECTION ORDINANCE—that provision prohibiting enlargement or expansion of nonconforming uses—is void and unenforceable on grounds that it exceeds the statutory authority of § 59.97(10)(a), STATS.[1] Seitz argues that nowhere does the state statute say that counties can

---

[1] In his brief, Seitz refers to § 3.07(1)(B)1, a subsection that does not exist. This is a case involving legal nonconformity, and we presume he intended WAUKESHA COUNTY SHORELAND AND FLOODLAND PROTECTION ORDINANCE § 3.15(2)(B)1. Section 3.15(2) (B) provides:

(2) *Classification and regulation:* For the purposes of administration, legal non-conformity shall be classified and regulated as follows:

. . ..

(B) *Non-conforming use of structures and lands:*

1. No such use shall be expanded or enlarged.

2. Upon petition to and approval of the county zoning agency, such use may be changed to another use provided the zoning agency determines that the new use would not result in a greater degree of non-conformity than the current use.

3. When any such use is discontinued for twelve (12) consecutive months or eighteen (18) cumulative months during a three-year period, any future use of the land or structure shall conform to the use regulations of the applicable district.

4. When a structure which houses such non-conforming use, is damaged to the extent of more than fifty (50) percent of its current fair market value, it shall not be restored for any use except in conformity with the applicable district regulations.

5. Total structural repairs or alterations to a structure housing a non-conforming use shall not exceed fifty (50) percent of the fair market value of the structure.

enact nonconforming use ordinances which prohibit enlargement or expansion. The only two prohibitions recognized are situations where more than fifty percent of assessed value is spent to improve the nonconforming use or where the use is discontinued for more than twelve months.[2]

██

The County responds that this issue was not raised until appeal and argues waiver. Waiver is not a jurisdictional defect, but one of administration. *See Terpstra v. Soiltest, Inc.,* 63 Wis. 2d 585, 593, 218 N.W.2d 129, 133 (1974). We will consider the issue despite waiver because it is a question which we believe will recur.

The County then asserts that if we address the issue, we should follow the reasoning in *State ex rel. Brill v. Mortenson,* 6 Wis. 2d 325, 94 N.W.2d 691 (1959), and hold that the County has an implied power to restrict nonconforming uses in ways not specifically indicated by statute.

The County's argument requires us to examine *Brill*. Brill owned a building that had been built and used as a woodworking shop before a county ordinance

---

[2] Section 59.97(10)(a), STATS., provides:

An ordinance under this section shall not prohibit the continuance of the lawful use of any building or premises for any trade or industry for which such building or premises is used at the time such ordinances take effect, but the alteration of, or addition to, or repair in excess of 50% of its assessed value of any existing building or structure for the purpose of carrying on any prohibited trade or new industry within the district where such buildings or structures are located, may be prohibited. The continuance of the nonconforming use of a temporary structure may be prohibited. If such nonconforming use is discontinued for a period of 12 months, any future use of the building and premises shall conform to the ordinance.

was enacted making the area residential. He wanted to use the building as a meat-distributing and processing plant. The Racine County Zoning Board of Adjustments, in denying a use and occupancy permit, relied upon a county ordinance specifying that the right to a nonconforming use was lost if the use was discontinued for more than twelve months. *Id.* at 328-29, 94 N.W.2d at 693. Brill complained that since the state statute did not authorize discontinuance for a period of more than twelve months as a valid reason to invalidate a nonconforming use, the ordinance was invalid. *Id.* at 331, 94 N.W.2d at 694. Brill cited the maxim that county boards have only such legislative powers as are conferred upon them by statute, expressly or by clear implication. The supreme court held that the power to restrict nonconforming uses is clearly implied from the statute whose purpose is to protect only the "original nonconforming use." *Id.*

The County argues that a similar situation exists here. It asserts that while the statute does not expressly allow a county to prohibit enlargement or expansion, it is in keeping with the general purpose of the statute—to protect only the "original" use.

Seitz replies that *Brill* is distinguishable because at the time *Brill* was authored, the enabling statute was silent as to what constituted abandonment. Seitz apparently argues that because the legislature has now prescribed the two situations where a use is no longer conforming, the legislature is no longer "silent" and there is no need to imply anything. Seitz argues that the statutes "expressly" provide that counties may not prohibit the continued use of premises except under circumstances "specifically identified."

We agree with the County. *Brill* noted the language of the statute in effect at the time the case was

23

written. The statute said that ordinances " 'shall not prohibit the continuance of the use of any building or premises for any trade or industry for which such building or premises are used at the time such ordinances take effect . . ..' " *Brill*, 6 Wis. 2d at 330, 94 N.W.2d at 694 (quoting § 59.97(4), STATS., 1949). In other words, uses in place at the time of the ordinance were to be protected. The unstated converse was also therefore true by clear implication—that new uses were not protected. The *Brill* court said as much when it wrote that "nonconforming uses are closely limited and *are not to be enlarged* in derogation of the general scheme . . .." *Id.* at 331a, 94 N.W.2d at 694 (emphasis added).

This has been the expression of law in Wisconsin since at least 1958, if not before. *See Town of Yorkville v. Fonk,* 3 Wis. 2d 371, 378, 88 N.W.2d 319, 323 (1958). Today's statute still carries the language that no ordinance may prohibit the "lawful use of any building or premises for any trade or industry for which such building or premises is used at the time such ordinances take effect . . .." Section 59.97(10)(a), STATS. The converse still holds by clear implication"that change of use is not protected. It follows that the power to regulate a nonconforming use includes the power to limit the extension or expansion of it if the result is a change in use. Such is part of the general practice of zoning. We conclude that the reasoning expressed in *Brill* means that we construe the legislature to have, by clear implication of the language expressed in the statute, given counties authority to enact ordinances regulating expansion or enlargement if it results in a change in use. We reject Seitz' initial argument.

24

We now reach the second issue of whether it was correctly determined that Seitz's expansion and enlargement resulted in a change of the nonconforming use. Seitz claims that our decision in *Seitz I* is dispositive in his favor. He reads *Seitz I* to say that the mere expansion or enlargement of a legal nonconforming use cannot invalidate the use absent proof that there was a violation of an underlying zoning ordinance. In the same manner as Seitz' first argument required us to examine *Brill*, his second argument commits us to discuss our holding in *Seitz I*.

At the time that the WAUKESHA COUNTY SHORELAND AND FLOODLAND PROTECTION ORDINANCE § 3.15(2)(B)1 was enacted, Seitz operated a business actively engaged in boat rentals and storage and fuel and bait sales. *Seitz I*, 140 Wis. 2d at 115, 409 N.W.2d at 405. Despite the fact that these uses did not conform to the new zoning ordinance, Seitz had obtained a vested interest in continuing these activities. *Id.* at 116, 409 N.W.2d at 406. His dry-docking facility expanded from three to five boats in 1969 to fifty-four boats at the time of *Seitz I*. Additionally, he expanded his pier length from 80 feet to 120 feet and then to 192 feet so that he could wet-dock up to thirty-five boats. *Id.* at 114, 409 N.W.2d at 405.

The County argued that the development of Seitz' pier facilities and enlargement of his dry-docking business constituted an illegal expansion of a nonconforming use. We wrote: "[I]f an increase in volume, intensity or frequency of use is coupled with some element of identifiable change or extension, the enlargement will invalidate a legal nonconforming use." *Id.* at 117, 409 N.W.2d at 406 (citing 1 ROBERT M. ANDERSON, AMERICAN LAW OF ZONING 3D § 6.50 (1986)). However, we further cited Anderson for the proposition

25

that a mere increase in the volume, intensity or frequency of a nonconforming use is not sufficient to invalidate it. *Id.* at 117-18, 409 N.W.2d at 406. We held that both the dry-docking changes and the wet-docking extensions were mere increases brought on by a change in the volume, intensity or frequency of the nonconforming use already existing. *Id.* at 121, 409 N.W.2d at 408. This was the main theme of *Seitz I.*

In addition to our main holding, we observed that the Waukesha ordinances "encourage" at least some improvement and modernization of nonconforming buildings at the expense of extending the life expectancy of nonconforming uses. *Id.* at 120-21, 409 N.W.2d at 408. Thus, the county zoning ordinance not only prohibited invalid extensions and enlargements, it also *regulated valid* extensions and enlargements of nonconforming uses. Our holding recognized that enlargements and extensions which change the use are not valid. However, mere increases in the use due to changes in volume or frequency could not be prohibited. We further recognized, however, that even though these types of improvements could not be *prohibited,* they could be *regulated.* What *Seitz I* stands for is that counties can monitor valid extensions and enlargements to make certain that the improvements meet the aesthetic and structural goals of the community. In that case, we could not find that Seitz' extensions and expansions, though a result of a mere increase of a valid use, nonetheless ran afoul of any regulatory marker.

Seitz misreads *Seitz I* by arguing that county enforcement actions seeking to prohibit *invalid* extensions and enlargements must have as their condition precedent the violation of a specific regulation. That is simply not the holding of *Seitz I* because it confusingly

26

intertwines our discussion about *prohibition* and our separate discussion about *regulation*. We conclude that the correct reading of *Seitz I* is this: if there is an identifiable change in the use, the enlargement is illegal. If the expansion is a result of a mere increase in the historically allowed use, the enlargement or expansion will be allowed subject to regulatory markers.

Seitz alternatively claims that even if the question is identifiable change in use, all of his changes generally relate to marina activities and are therefore simply an increase in the already existing use—marina activity. Because his operation has been a marina activity since before the onset of the ordinance, he argues that his enlargement or expansion is a mere increase in the volume, intensity or frequency of the nonconforming use. We do not agree. There is credible evidence from which the jury could find that the old enterprise was a dry-docking and wet-docking facility with fuel and bait services. Now, his enterprise has a place for lounging and entertainment. The jury heard that there is a retail store now. There was no retail store beforehand. The jury also heard that Seitz now offers new boat lifts and piers manufactured by various industries. This was not the case at the time the ordinance was originally effective. Seitz now sells new boats. The marina was not in the boat sales business at the time the ordinance came into being. The jury could well decide that Seitz' new enterprise is more than a wet-dock/dry-dock operation; it is now a multi-faceted enterprise that happens to be on a lake and in a marina-like setting. The jury decided that the use has changed; we will not disturb the finding.[3]

---

[3] Seitz prevailed upon the trial court to ask a question of the jury about whether all of the new activities were "marina

Two other issues remain to be decided. Question two of the jury verdict required the jury to specifically identify any new uses established on the Pewaukee Marina complex since the earlier litigation. The trial court explained to the jury that the County wanted it to find that there were new uses and Seitz wanted the jury to find that there were not any new uses. The trial court stated to the jury that it was Seitz' burden to convince the jury that there were no changes of use.

Seitz argues that the trial court placed the burden of proof upon the wrong party. In deciding the burden of proof question, the trial court relied upon *Walworth County v. Hartwell,* 62 Wis. 2d 57, 214 N.W.2d 288 (1974). There, the supreme court stated: "[T]he burden is upon the property owner to prove by a preponderance of the evidence that the nonconforming use was in existence at the time the ordinance was passed." *Id.* at 61, 214 N.W.2d at 290.

Seitz claims that the trial court's reliance upon *Hartwell* was misplaced. He argues that the *Hartwell*

---

related." This question, which became question five of the jury verdict, was later held to be immaterial to the case. The trial court was correct. The question is not whether the uses are related to a marina but rather, what kind of marina enterprises existed at the time of the ordinances' enactment and have those marina enterprises changed. Seitz again misreads *Seitz I* in arguing that once a marina, always a marina, even though marina business itself is transformed. We did not so hold. If what the business puts into the stream of commerce changes or if the type of service given changes, then an identifiable change has occurred. In *Seitz I,* enlargement of the dry-docking and wet-docking facilities were simply extensions of what had gone on before the ordinance was effective. The jury in this action found that the extensions since *Seitz I* represent an identifiable change in the type of services rendered and the products sold. Question five was indeed immaterial.

burden is only applicable when the question is whether the nonconforming use actually existed at the time of an ordinances' enactment. That was the question answered in the prior litigation that became *Seitz I*. Seitz contends that, here, the question is not whether a nonconforming use existed, but whether the owner of the nonconforming use violated the conditions of that use by changing the use. He argues that because he has a vested right in the nonconforming use, it is now the County's burden if it wants to take the vested right away.

Seitz offers no authority to support his argument. Rather, he simply posits that the real question is whether the ordinance regarding nonconforming uses was violated. He reasons that governmental entities have the burden to prove ordinance violations before a vested right may be taken.

■ We hold that the trial court properly placed the burden of proof on Seitz. We wrote in *Seitz I* that the spirit of zoning is to restrict a nonconforming use and to eliminate such uses as quickly as possible. *Seitz I*, 140 Wis. 2d at 116, 409 N.W.2d at 406. The law does not tolerate the continuance of nonconforming uses if the use is changed and the law will not condone an activity simply because it takes place on the premises. *See id.* In other words, nonconforming uses are an anomaly. They are suspect and therefore circumscribed. If the owner of the nonconforming use expands or enlarges the use, it should be the owner's burden to prove that the nonconforming use is still valid.

This was obviously the reasoning behind the supreme court's ruling in *Gabe v. Cudahy,* 52 Wis. 2d 13, 17, 187 N.W.2d 874, 876 (1971), where the nonconforming user was required to prove the use was

29

continuous to the present and to show there was no twelve-month interval during which the nonconforming use ceased. The New Hampshire Supreme Court put it this way:

> The burden of establishing that the use in question. is fundamentally the same use and not a new and impermissible one is on the party asserting it. This is in accordance with the general policy of zoning to carefully limit the extension and enlargement of nonconforming uses.

*New London v. Leskiewicz*, 272 A.2d 856, 860 (N.H. 1970). We conclude that the burden of proof was on Seitz.

The last issue concerns the remedy. The trial court determined that violation of the nonconforming use results in the invalidation of not only the illegal expansion or enlargement, but the prior legal nonconforming use as well. Seitz acknowledges that we said as much in *Seitz I*, but dismisses our statement as dicta. Seitz further acknowledges past cases such as *Brill* where the court wrote that the right to continue a use may be lost. *Brill*, 6 Wis. 2d at 331a, 94 N.W.2d at 694-95. He emphasizes the word "may," however, and claims that the rule is equivocal.

Seitz argues that the nonconforming use is a "vested zoning right" and complains that the statutes give owners of nonconforming uses no notice of the exposure which may be incurred should expansion or enlargement of the use be contemplated. He asserts that unless there is a statute prescribing that the remedy is loss of the whole use, the remedy should be limited. He suggests that the remedy in this case should be that the new uses are ordered halted, but that the prior legal nonconforming uses may remain.

We acknowledge that our statement in *Seitz I* can be regarded as dicta. So we will say in this case, on the merits, what we said in *Seitz I*. The violation of the nonconforming use by expansion or enlargement which changes the use invalidates the legal nonconforming use as well as the illegal change. We have already recited our previous statement in *Seitz I* that the spirit of zoning is to restrict and eventually *eliminate* the use. We further observe that this was the law even before *Seitz I*. While the *Brill* court used the word "may" in its holding, the fact is that Brill's use was invalidated. The same result occurred in *Yorkville v. Fonk*, 3 Wis. 2d 371, 88 N.W.2d 319 (1958), and *Jefferson County v. Timmel*, 261 Wis. 39, 51 N.W.2d 518 (1952). We conclude that the remedy is consistent with the policy fostering elimination of the nonconforming use.

*By the Court.*—Order affirmed.