FORESIGHT, INCORPORATED, Plaintiff-Appellant,

v.

Daniel BABL, d/b/a Weston Disposal, Inc., Defendant-Respondent.

Court of Appeals

*No. 96–1964. Submitted on briefs March 4, 1997.—Decided May 6, 1997.*

(Also reported in 565 N.W.2d 279.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Mary M. Prohaska of Mc Cartan Law Firm, S.C. of Wausau.*

On behalf of the defendant-respondent, the cause was submitted on the brief of *Russell W. Wilson of Ruder, Ware & Michler, S.C. of Wausau.*

Before LaRocque, Myse and Mangerson,[1] JJ.

LA ROCQUE, J. Foresight, Inc., appeals an order granting summary judgment to Weston Disposal (hereafter, Disposal). Foresight asserts that it is entitled to summary judgment under the undisputed facts of record. We agree. We reverse the judgment and remand to permit the trial court to address remedies applicable under the circumstances.

This dispute concerns land once used as a sand and gravel mine known as the "John Ryan Pit." The parcel was located in the Town of Weston until December of 1992 at which time it was annexed to the Village of Rothschild. Prior to annexation, the parcel was purchased by Disposal as a disposal site for construction waste and demolition material. Disposal received a permit from Weston authorizing Disposal to dump and store certain materials, but prohibiting the dumping of other materials and imposing certain restrictions on the use of the property. Disposal proceeded to dump various materials at the site.

When Weston issued the permit, the parcel was zoned Agriculture/Residence (A/R). However, prior to the 1992 annexation, the site was rezoned Residential Estate (RE). Rothschild zoned the parcel Single Family Residence (R–1).

A dispute arose when Foresight purchased property adjacent to the Ryan Pit in 1995. Foresight desired to develop the area and alleged that Disposal's use of the property as a disposal site violated Rothschild's R–1 zoning designation. Foresight sought to enjoin Disposal from using the property in violation of the Rothschild zoning ordinance. Disposal asserted

---

[1] Circuit Judge Mark A. Mangerson is sitting by special assignment pursuant to the Judicial Exchange Program.

that its use of the property as a disposal site was a permitted nonconforming use, citing its permit from Weston and Weston's zoning ordinance. Both sides moved for summary judgment, and the trial court granted Disposal's motion.

In reviewing the grant of a summary judgment motion, we are required to apply the standards set forth in § 802.08, STATS., in the same manner as the trial court. *Voss v. City of Middleton*, 162 Wis. 2d 737, 748, 470 N.W.2d 625, 629 (1991). Those standards have been described numerous times by this court, including in *Grams v. Boss*, 97 Wis. 2d 332, 338, 294 N.W.2d 473, 476–77 (1980), and need not be repeated here. The application of zoning ordinances to undisputed facts presents a question of law that we review without deference to the trial court. *Browndale Int'l, Ltd. v. Board of Adjust.*, 60 Wis. 2d 182, 199, 208 N.W.2d 121, 130 (1973). Whether a particular use is a legal nonconforming use is a question of law that we review de novo. *Waukesha County v. Seitz*, 140 Wis. 2d 111, 116, 409 N.W.2d 403, 405–06 (Ct. App. 1987).

We conclude that neither the permit nor the Weston ordinance permitted Disposal's use of the property as a disposal site. Therefore, Disposal's use of the property for that purpose is not a legal nonconforming use under the Rothschild ordinance.

Because the site is located in Rothschild's R–1 district, the use constitutes a nonconforming use. Disposal does not contest this proposition. For Disposal's use of the site to qualify as a legal nonconforming use, the use must have been legal under the Weston zoning ordinance. *See State ex rel. Ryan v. Pietrzykowski*, 42 Wis. 2d 457, 463, 167 N.W.2d 242, 245–46 (1969). Disposal first argues that Weston's

ordinance authorized it to use the property as a disposal site.[2] We disagree. The property was originally zoned A/R. The Weston zoning ordinance identified which uses were permitted in a district zoned A/R:

> (1) PERMITTED USES. Any use permitted in the R1 District and agriculture.
>
> (2) CONDITIONAL USES. Any use allowed as a conditional use in the R1 District . . . .

WESTON, WIS., ORD. § 17.06–5 at 17–69 (1982). Dumping, waste disposal or mine reclamation are not identified as permitted or conditional uses in an R1 district. Nor is there any permitted or conditional use that can be fairly interpreted to allow for those activities. Such uses are therefore not permitted in an A/R district.[3]

Disposal argues that because use as a disposal site is not explicitly prohibited by the Weston zoning ordinance, it is permitted. This is not the case. First, the Weston ordinance itself states that in land zoned residential, "[n]o building or tract of land shall be devoted to any use other than a use permitted hereinafter in the zoning district in which such building or tract of land shall be located," with the exception of conditional uses and legal nonconforming uses. WESTON, WIS., ORD. § 17.06 at 17–52 (1982).

---

[2] Disposal characterizes its activities as land or mine reclamation. We do not consider this distinction relevant because the Weston ordinance does not permit any of those activities in an A/R district.

[3] Disposal does not argue that the rezoning of the property to RE (residential estate) in 1992 altered the property's status to permit its activities. We therefore do not address the effect of the 1992 rezoning.

Furthermore, we conclude that because the ordinance explicitly enumerates uses permitted within each district, all other uses are necessarily prohibited. As stated by McQuillin,

> Zoning ordinances may be permissive in form, permitting specified uses and buildings and prohibiting all others within a district. . . . The mention or listing of things which may be done necessarily implies the exclusion of others, unless the ordinance is vague or ambiguous.

8 McQUILLIN, *Municipal Corporations*, § 25.124 at 492 (3d ed. 1991) (footnotes omitted).[4] The Weston ordinance relating to conditional uses in A/R zones is not ambiguous. There is no valid conditional use permit because the Weston ordinance did not specify a disposal site as a conditional use. Conditional uses enjoy acceptance as valid and successful tools of municipal planning and allow a municipality greater flexibility to regulate certain uses of land. *State ex rel. Skelly Oil Co. v. Common Council*, 58 Wis. 2d 695, 700–01, 207 N.W.2d 585, 587 (1973). However, a conditional use permit only allows a property owner " 'to put his property to a use *which the ordinance expressly permits* ' when certain conditions have been

---

[4] This conclusion is strengthened by the fact that dumping, mining and reclamation are explicitly permitted in *other* districts under the Weston zoning ordinance. Dumping is a conditional use in an M2 district. WESTON, WIS., ORD. § 17.08–2 (2)(b) at 17–115 (1982). Mining operations are permitted in an M2 District. *Id.*, § 17.08–2(1)(b)23 at 17–114. Land reclamation is permitted in certain circumstances in a Valley Plain District. *Id.*, § 17.09(9) at 17–118. We conclude that because these uses are explicitly authorized in other districts, they are necessarily prohibited where not explicitly authorized.

met." *Id.* at 701, 207 N.W.2d at 587 (quoting 2 RATHKOPF, THE LAW OF ZONING & PLANNING, 54–4 n.3 (1968) (emphasis added). Weston can still closely regulate these activities through a permit, but may only do so in districts zoned for such activities.

■

Disposal also argues that the Weston permit authorized it to use the property as a disposal site. We disagree. A permit issued for a use prohibited by a zoning ordinance is illegal per se. *Snyder v. Waukesha County Board of Adjust.*, 74 Wis. 2d 468, 477, 247 N.W.2d 98, 103 (1976). Because dumping or waste storage was not authorized by the ordinance, the Weston permit was void.

Disposal's argument to the contrary rests on the premise that its activities did not constitute a "use" within the meaning of Weston's zoning ordinance and were therefore not subject to zoning regulations. To support its argument, Disposal asserts that the term "use" is ambiguous. That term is defined as "the purpose or activity for which the land . . . is designed, arranged, or intended, or for which it is occupied or maintained." WESTON, WIS., ORD. § 17.01(2) at 17–16 (1982). Disposal suggests that the ordinance could mean to restrict only permanent activity or it could apply to all activity on the land. Disposal asserts that because the term "use" is ambiguous, Weston's interpretation of that term is entitled to deference. *See Snyder*, 74 Wis. 2d at 475, 247 N.W.2d at 102 (review of decision of zoning authority is limited to whether decision is arbitrary or whether it is unreasonable or lacks a rational basis).

We cannot agree that "use" is ambiguous. The plain language of the definition does not distinguish between permanent and temporary uses. Furthermore,

605

the "exempted uses" clause of the ordinance, which exempts certain uses from the zoning regulations, makes no exemption for temporary activity. WESTON, WIS., ORD. § 17–05(4) at 17–52 (1982). Included in the definition of "use" is any "activity for which the land . . . is occupied or maintained." *Id.*, § 17.01(2) at 17–16. In this case, the property was maintained as a disposal site.

Disposal also argues, however, that Weston acted reasonably when it chose to regulate Disposal's activities through a permit because the permit describes in much greater detail the activities permitted and prohibited on the property. While the latter observation may be true, a zoning authority cannot issue a permit authorizing activities in violation of its zoning ordinance.

Disposal does not argue that its permit constitutes a variance. A variance authorizes a property owner to use his property in a manner that is prohibited by the ordinance when not to be able to do so would be a hardship. *Skelly Oil Co.*, 58 Wis. 2d at 701, 207 N.W.2d at 587.

Disposal asserts that Foresight failed to exhaust its administrative remedies before bringing suit. We conclude that § 62.23(7)(f)(2), STATS., authorizes this action. This statute allows a "neighboring property owner who would be specially damaged" by a violation of a local zoning ordinance to bring an action to prevent or restrain the violation. A landowner need not exhaust his administrative remedies before bringing an action under this section. *Diehl v. Dunn*, 13 Wis. 2d 280, 284, 108 N.W.2d 519, 521 (1961).

Finally, after the briefs were filed in this action, the Rothschild board approved an ordinance requiring

permits for non-metallic mining and reclamation of non-metallic mines in the district, which includes the Ryan Pit. Because the record in this case is silent as to whether Disposal has applied for or received such a permit, we do not consider the effect this ordinance has on the controversy.

We conclude that Disposal's use of the Ryan Pit as a dumping area was prohibited under the Weston zoning ordinance and that its "Dumping Grounds Permit" was illegal per se. Because its use of the property was not legal under the Weston ordinance, it is not a prior nonconforming use under the Rothschild ordinance. Because the trial court order did not address the question of remedies, we reverse and remand for further consideration of that issue.

*By the Court.*—Judgment and order reversed and cause remanded with directions.