FITZPATRICK, J.
¶1 In 1999, Lamar Central Outdoor, LLC acquired an outdoor advertising sign that is located adjacent to an interstate highway. At that time, the sign was legal but nonconforming under Wisconsin law. Several years after acquiring the sign, Lamar put extension panels on the sign which added to the previous area of signage. In 2012, the Wisconsin Department of Transportation determined that the entire sign must be removed because Lamar's enlargement of the sign caused it to lose its nonconforming status and become an illegal sign subject to removal. After a contested case hearing, the Division of Hearings and Appeals (DHA) affirmed the Department's order to remove the sign. The Portage County Circuit Court affirmed the DHA decision, and Lamar appeals. We agree with the Department that the sign is illegal under Wisconsin law and affirm the order to remove the sign.
BACKGROUND
¶2 There is no dispute as to the following facts.
¶3 The sign in dispute was erected in 1991, pursuant to a permit from the Department, adjacent to what was then U.S. Highway 51 in the City of Stevens Point. At that time, the sign conformed to the requirements of WIS. STAT. § 84.30 (2015-16),[1] which regulates outdoor advertising signs in Wisconsin. When it was constructed, the sign measured 14 feet by 48 feet on each face in accordance with its originally permitted size of 1,344 square feet. In January 1996, the portion of Highway 51 adjacent to the sign became part of the interstate highway system, and the highway was designated Interstate 39. As will be explained in detail in the Discussion below, because of that change, the sign became legal but nonconforming under § 84.30.[2] Lamar acquired the sign in 1999.
¶4 In 2012, Lamar applied to the Department for a permit to remove vegetation obstructing the sign. While considering that application, the Department reviewed a photograph taken in 2008 showing that an extension had been added to the top of the sign, and that lead to further investigation by the Department. The Department alleges that, starting in 2007, Lamar added extension panels of various sizes and shapes to the sign. According to the Department, these extensions significantly increased the previous size of the sign.
¶5 The Department took the position that, by adding the extensions, Lamar enlarged the area of the sign in violation of WIS. ADMIN. CODE § TRANS 201.10(2)(e) (Feb. 2013) (providing that "[i]n order to lawfully maintain and continue a nonconforming sign ... [t]he sign ... may not be enlarged.").[3] According to the Department, when Lamar placed extensions on the sign, it failed to lawfully maintain and continue the sign, causing the sign to lose its nonconforming status and become an illegal sign subject to a removal order. WIS. ADMIN. CODE § TRANS 201.09 ("[A]ny nonconforming sign which subsequently violates s. 84.30, Stats., or these rules, shall be subject to removal as an illegal sign.").
¶6 In August 2012, the Department denied Lamar's application for a vegetation cutting permit on the basis that the sign had been enlarged. The Department issued a sign removal order to Lamar in September 2012. The extensions were removed by Lamar before the Department issued the removal order, so the sign again measured 14 feet by 48 feet at the time the removal order was issued.
¶7 In September 2012, Lamar requested contested case hearings to review the vegetation cutting permit and the removal order. After a hearing, the DHA concluded that Lamar enlarged the sign, causing the sign to become illegal and lose its nonconforming status under Wisconsin law. As a result, the DHA issued a final decision affirming the removal order and the denial of the vegetation cutting permit.
¶8 Pursuant to WIS. STAT. ch. 227, Lamar petitioned for judicial review of the DHA's decision. The circuit court affirmed the DHA's decision, and Lamar now appeals.
¶9 We will refer to other material facts in the following Discussion.
DISCUSSION
¶10 Lamar contends that the DHA decision contains various errors. First, Lamar argues that the evidence was insufficient to prove that the sign was enlarged beyond its allowed size. Second, Lamar asserts that Wisconsin law does not prohibit enlarging the sign. Third, Lamar contends that, even if Wisconsin law prohibits enlarging the sign, it has a statutory right to cure the violation. Fourth, Lamar claims that the Department was required to engage in formal rulemaking prior to enforcing administrative regulations regarding the sign. Finally, Lamar argues that, under the common law of nonconforming uses, it had the right to enlarge the sign. We address, and reject, each of Lamar's arguments in turn.[4]
I. Standard of Review and Interpretation of Statutes and Administrative Rules.
¶11 In an appeal of a circuit court order reviewing an agency decision, we review the decision of the agency, not that of the circuit court. Hilton ex rel. Pages Homeowners' Ass'n v. DNR , 2006 WI 84, ¶15, 293 Wis. 2d 1, 717 N.W.2d 166. When reviewing findings of fact made by the DHA, we apply the "substantial evidence" standard. Id. , ¶16; WIS. STAT. § 227.57(6). That standard requires us to ask whether, after considering all the evidence in the record, reasonable minds could arrive at the same conclusion and, if so, we must affirm the DHA findings. Hilton , 293 Wis. 2d 1, ¶16. We accord no deference to the DHA's interpretations of law and review de novo questions of statutory and regulation interpretation. See § 227.57(11) (no deference where agency action or decision restricts property owner's free use of property); see also Tetra Tech EC, Inc. v. DOR , 2018 WI 75, ¶108, 382 Wis. 2d 496, 914 N.W.2d 21 ("We have also decided to end our practice of deferring to administrative agencies' conclusions of law.").
¶12 The questions before us require the interpretation of statutes and administrative rules. "[W]hen interpreting administrative regulations, we use the same rules of interpretation as we apply to statutes." DaimlerChrysler v. LIRC , 2007 WI 15, ¶10, 299 Wis. 2d 1, 727 N.W.2d 311.
¶13 "[S]tatutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.' " State ex rel. Kalal v. Circuit Court for Dane Cty. , 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (quoting Seider v. O'Connell , 2000 WI 76, ¶43, 236 Wis. 2d 211, 612 N.W.2d 659 ). Nonetheless, "scope, context, and purpose are perfectly relevant" to an interpretation of a statute as long as "the scope, context, and purpose are ascertainable from the text and structure of the statute itself." Id. , ¶48. More specifically, we interpret the language of a statute or rule "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." Id. , ¶46.
¶14 In a similar vein, "[w]hen an administrative agency promulgates regulations pursuant to a power delegated by the legislature, we construe those regulations 'together with the statute to make, if possible, an effectual piece of legislation in harmony with common sense and sound reason.' " DaimlerChrysler , 299 Wis. 2d 1, ¶10 (quoting State v. Busch , 217 Wis. 2d 429, 441, 576 N.W.2d 904 (1998) ).
¶15 We consider, first, whether there is substantial evidence in the record to support the DHA's finding that Lamar enlarged the sign.
II. The Record Contains Substantial Evidence That Lamar Enlarged The Sign.
¶16 As mentioned, under WIS. ADMIN. CODE §§ TRANS 201.09 and 201.10(2)(e), enlarging a nonconforming sign causes the sign to lose its lawful nonconforming status, and the sign becomes an illegal sign subject to removal. In its decision, the DHA found that "Lamar used extensions of varying sizes and shapes on the subject sign at different times." More specifically, on the basis of photographic evidence and Lamar's discovery responses, the DHA found that Lamar first placed extensions on the sign starting in 2007. The DHA also found that, at the time the Department issued the removal order in September 2012, the sign had been restored to its legally permitted size of 14 feet by 48 feet.
¶17 Lamar does not deny that it placed extensions on the sign. Rather, Lamar argues that the Department failed to meet its burden of establishing that Lamar enlarged the sign beyond its permitted size and failed to prove the size of the sign when it became nonconforming in 1996. See WIS. ADMIN. CODE § HA 1.12(3)(a) (Dec. 2002) (the burden of proof is on the Department to support its factual assertions). Put another way, Lamar asserts that the Department was required to prove the precise dimensions of the sign when it became nonconforming in 1996 and then establish that the sign was enlarged after that date. We will assume, without deciding, that Lamar has correctly summarized what the Department was required to prove, but, at any rate, we reject Lamar's argument because it neglects the applicable standard of review and the evidence in the record.
¶18 The substantial evidence standard requires that we affirm the agency's findings of fact if the record contains evidence from which reasonable minds could arrive at the same conclusion. Hilton , 293 Wis. 2d 1, ¶16 ; WIS. STAT. § 227.57(6). We conclude that, based on the evidence in the record, the DHA reasonably concluded that Lamar's use of extensions on the sign enlarged it beyond its legally permitted size starting in 2007. That evidence is summarized as follows:
• The original permit, issued in 1991, was for a two-sided sign with dimensions 14 feet by 48 feet, for a total area of 1,344 square feet. The original permit does not refer to extensions of any kind. Furthermore, Lamar admitted in its interrogatory answers that, at the time it acquired the sign in 1999, the sign faces measured 14 feet by 48 feet. Lamar points to no evidence in the record that extensions were placed on the sign before 2007.
• Lamar's internal records include documents that describe the size of the sign as 14 feet by 48 feet and indicate an extension measuring 4 feet by 48 feet that was present on the sign in November 2007 and February and August 2008. The accompanying diagram in each of these documents plainly shows an extension added to the top of the sign.
• Photographs of the sign taken when an extension was present show the back of the extension visible over the top of the north face of the sign.[5]
¶19 The record confirms the DHA's findings that the area of the sign on the date it became nonconforming in 1996 was the originally permitted area of 1,344 square feet, and that Lamar first enlarged the sign by placing extensions on the sign starting in 2007. Furthermore, the record shows that the original rectangular portions of the sign measured 14 feet by 48 feet for the entire lifespan of the sign, meaning that the extensions unquestionably enlarged the sign beyond the square footage allowed by the permit from the Department.
¶20 In sum, we conclude that the record contains substantial evidence supporting the DHA's pertinent factual findings.
III. The Sign Lost Its Nonconforming Status and Is Subject to Removal as an Illegal Sign.
¶21 The parties agree that the sign was nonconforming at the time that Lamar acquired the sign in 1999. The parties dispute whether Lamar's use of extensions caused the sign to lose its nonconforming status. We conclude that Lamar's enlargement of the sign caused the sign to lose its nonconforming status and become an illegal sign subject to removal.
¶22 For context, and because it is necessary to understand the parties' positions, we begin by reviewing applicable provisions of Wisconsin and federal law governing outdoor advertising signs.
A. Statutory and Rule Requirements for Outdoor Advertising Signs.
¶23 WISCONSIN STAT. § 84.30 and WIS. ADMIN. CODE ch. TRANS 201 create a scheme regulating the erection, maintenance, and removal of outdoor advertising signs. The legislature enacted § 84.30 to carry out the State's obligations "to conform to the expressed intent of congress to control the erection and maintenance of outdoor advertising signs" under the Highway Beautification Act of 1965, Pub. L. No. 89-285, 79 Stat. 1028, codified at 23 U.S.C. § 131 (2012).[6] See § 84.30(1) ; see also Vivid, Inc. v. Fiedler , 182 Wis. 2d 71, 78, 512 N.W.2d 771 (1994). Federal law mandates that states that fail to provide for the "effective control of the erection and maintenance along the Interstate System and the primary system of outdoor advertising signs" will receive less federal highway aid. Sec. 131(b). Accordingly, § 84.30(12) directs the Department to "seek agreement" with the U.S. Secretary of Transportation that Wisconsin's statutory scheme "provide[s] effective control of outdoor advertising signs" in "conformance with that federal law." Sec. 84.30(12).
¶24 WISCONSIN STAT. § 84.30 generally prohibits the erection and maintenance of any signs along the interstate system. See § 84.30(3). Nonetheless, the statute creates exceptions and permits the maintenance of certain types of signs, subject to various criteria. See § 84.30(3), (4).
¶25 Of importance to this case is that WIS. STAT. § 84.30"recognizes categories of nonconforming signs that may continue to exist for certain periods of time or upon certain conditions." Lamar Cent. Outdoor, LLC v. DOT , 2008 WI App 187, ¶20, 315 Wis. 2d 190, 762 N.W.2d 745 [hereinafter Lamar I ]; see also § 84.30(5). Subsection (5) governs "nonconforming" signs. See § 84.30(5)(a) ("Signs ... which do not conform to the requirements herein are declared nonconforming").[7]
¶26 A nonconforming sign "shall be removed by the end of the 5th year" after it becomes nonconforming. WIS. STAT. § 84.30(5)(a), (b). Typically, the Department must pay "just compensation" for the removal of nonconforming signs and, although the statute describes a five-year lifespan for nonconforming signs, it provides that removal shall not occur if the Department lacks funds to pay just compensation.[8] Sec. 84.30(6), (15).
¶27 Wisconsin's statutory scheme regarding signs delegates authority to the Department to "promulgate rules deemed necessary to implement and enforce this section." WIS. STAT. § 84.30(14). The Department has promulgated several rules governing signs in WIS. ADMIN. CODE ch. TRANS 201. "These rules are so closely associated with the Wisconsin Statutes, and make such extensive reference to s. 84.30, Stats., that it is essential to refer to both these rules and the law in order to apply the controls." Sec. TRANS 201.01. Those rules "shall be interpreted consistently with the requirements of the 23 USC 131[9] [and] federal regulations related to outdoor advertising control at 23 CFR Part 750." The clear intent is that § 84.30, the Department's rules in ch. TRANS 201, the mandates of Congress set forth at 23 U.S.C. § 131, and the federal regulations promulgated at 23 C.F.R. Part 750 (2018)[10] are intended to work hand in glove.
¶28 We now turn to the specifics of WIS. ADMIN. CODE ch. TRANS 201. As discussed earlier, under § TRANS 201.09, "any nonconforming sign which subsequently violates s. 84.30, Stats., or these rules, shall be subject to removal as an illegal sign" without just compensation. Sec. TRANS 201.09 ; Lamar I , 315 Wis. 2d 190, ¶23.[11] The administrative rules establish several conditions that a nonconforming sign must satisfy in order to be lawfully maintained and continued. See § TRANS 201.10(2). Put another way, the rules "specif[y] in more detail the changes to a sign that result in loss of its lawful nonconforming status." Lamar I , 315 Wis. 2d 190, ¶23. A sign loses its nonconforming status and becomes an illegal sign if any of the conditions in § TRANS 201.10(2) is not satisfied or is violated. Id. ; see also § TRANS 201.02(5). As we shall discuss in greater detail below, the parties dispute the meaning of portions of § TRANS 201.10, and Lamar challenges the applicability of § TRANS 201.10(2)(e) to the sign in dispute.
¶29 Because it is germane to the analysis, we next discuss why this sign became nonconforming in 1996.
B. The Sign Became Nonconforming.
¶30 The parties agree that the sign became nonconforming in 1996 when the portion of U.S. Highway 51 adjacent to the sign was designated Interstate 39. Although the parties concur on this point, a clear view of the particular manner in which the sign became nonconforming helps to clarify the analysis below.
¶31 We have noted that WIS. STAT. § 84.30 generally prohibits the erection and maintenance of any signs adjacent to the interstate system. Sec. 84.30(3). However, pursuant to one of the exceptions to this general prohibition, signs may be erected in "business areas." Sec. 84.30(3)(e). In 1991, the sign was erected in the City of Stevens Point, at a location that satisfied the statutory definition of a "business area." Sec. 84.30(2)(b). Thus, the sign qualified for the "business area" exception for the erection and maintenance of signs under § 84.30(3)(e).
¶32 In January 1996, pursuant to 23 U.S.C. § 103(c)(4)(A), the U.S. Secretary of Transportation designated U.S. Highway 51 as part of the interstate system, and the portion of highway adjacent to the sign became Interstate 39. The parties agree that, when that designation occurred, the area in which the sign is located ceased to be a "business area," and the sign no longer qualified for the exception in WIS. STAT. § 84.30(3)(e) because the federal action meant that the state statutory provision no longer applied to the sign. From that point, the sign was permitted to remain in that location only as a nonconforming sign.
¶33 With these circumstances in mind, we now turn to the issue of whether Wisconsin law prohibited Lamar from enlarging the sign.
C. The Sign Lost Its Nonconforming Status and Is an Illegal Sign.
¶34 Lamar argues that the Department's rule proscribing enlargement of nonconforming signs does not apply to the particular sign at issue here and that there is no applicable statutory prohibition against enlarging the sign. Lamar may be correct that there is no applicable statutory prohibition, but we need not address that topic because we reject Lamar's argument that the Department's rule is inapplicable. Accordingly, we conclude that Lamar's placement of extensions which enlarged the sign caused it to lose its nonconforming status and become an illegal sign subject to removal.
1. The Parties' Arguments.
¶35 The Department has promulgated rules governing the removal of nonconforming signs pursuant to authority granted in WIS. STAT. § 84.30(14). See WIS. ADMIN. CODE §§ TRANS 201.02(5) and (7), 201.10(2) ; Lamar I , 315 Wis. 2d 190, ¶23. Section TRANS 201.10(2) provides a set of conditions that a nonconforming sign must satisfy to be lawfully maintained and continued. See § TRANS 201.10(2). Pertinent to this case, one portion of the rule requires that a nonconforming sign "must remain substantially the same as it was on the effective date of the state law, and may not be enlarged ." Sec. TRANS 201.10(2)(e) (emphasis added).[12] So, under that rule, a sign owner is prohibited from enlarging a nonconforming sign after "the effective date of the state law." If a sign has been enlarged after that time, the sign owner failed to continue its nonconforming status, making it an illegal sign subject to removal. Secs. TRANS 201.02(5), 201.09, 201.10(1) and (2)(e) ; see also Lamar I , 315 Wis. 2d 190, ¶23.
¶36 Lamar challenges the meaning of the rule that we summarize above. Lamar argues that WIS. ADMIN. CODE § TRANS 201.10(2)(e) does not apply to any signs lawfully erected after March 18, 1972 because of the rule's reference to "the effective date of the state law." See § TRANS 201.10(2)(e). Lamar contends that the phrase refers to March 18, 1972, the day after the publication of WIS. STAT. § 84.30 as enacted by the legislature. See WIS. STAT. § 991.11. Essentially, Lamar proposes that § TRANS 201.10(2)(e) should be construed to replace "the effective date of the state law" with March 18, 1972, as we do with the bracketed date in the following quote:
(2) In order to lawfully maintain and continue a nonconforming sign ... the following conditions apply:
....
(e) The sign must remain substantially the same as it was on [March 18, 1972], and may not be enlarged....
Under Lamar's view, § TRANS 201.10(2)(e) cannot apply to the sign because that sign was not in existence on March 18, 1972.
¶37 The DHA takes a contrasting position on the meaning of the phrase "the effective date of the state law." It argues that WIS. ADMIN. CODE § TRANS 201.10(2)(e) should be interpreted to refer to a sign that was lawfully erected initially, but, because of changed conditions, later fails to conform to an existing statutory or rule requirement. As applied to this case, DHA contends that "the effective date of the state law" was in January 1996 when U.S. Highway 51 became Interstate 39. At that time, because the highway became an interstate, a certain state law first affected the sign, and the sign then became nonconforming.
¶38 We now interpret WIS. ADMIN. CODE § TRANS 201.10(2)(e) and conclude that the DHA posits the more reasonable interpretation.
WIS. ADMIN. CODE 2. Interpretation of § TRANS 201.10(2).
¶39 Lamar effectively asks us to interpret the phrase "the effective date of the state law" in WIS. ADMIN. CODE § TRANS 201.10(2)(e) stripped of the context provided by the remainder of ch. TRANS 201, WIS. STAT. § 84.30, and applicable federal law. We reject Lamar's approach because the structure of ch. TRANS 201, understood within the context provided by § 84.30 and federal regulations codified at 23 C.F.R. Part 750, supports construing the phrase "the effective date of the state law" as used in § TRANS 201.10(2)(e) to refer to the date in January 1996 on which a state law rendered the sign nonconforming, and not to March 18, 1972 as Lamar contends.
¶40 Lamar's interpretation does not consider the present situation in which a sign becomes nonconforming because a preexisting statute or rule first applies to the sign due to changed conditions (here, when U.S. Highway 51 became Interstate 39). But, DHA's interpretation covers the present situation and thereby "avoid[s] [the] absurd or unreasonable results" that would flow from an interpretation that treats the "the effective date of the state law" in "isolation" rather than "as part of a whole." Kalal , 271 Wis. 2d 633, ¶46. "Context is important to meaning," as is "the structure of the [administrative rule] in which the operative language appears." Id. We conclude that the "intrinsic context in which [the administrative rule's] language is used," id. , ¶49, supports the DHA's interpretation. Furthermore, the DHA's interpretation construes the rule so as to make it "an effectual piece of legislation in harmony with common sense and sound reason." DaimlerChrysler , 299 Wis. 2d 1, ¶10 (quoting Busch , 217 Wis. 2d at 441 ).
¶41 One of two absurd results must flow from Lamar's proposed construction of WIS. ADMIN. CODE § TRANS 201.10(2)(e). The first is that neither WIS. STAT. § 84.30, nor the Department's rules, allow for the lawful continuance of any currently nonconforming sign that was erected after March 18, 1972 because no currently nonconforming sign erected after that date could be "substantially the same as it was on [March 18, 1972]." Indeed, for the reasons advanced by Lamar, it would necessarily follow that none of the conditions of § TRANS 201.10(2) (which set forth requirements for a sign to remain nonconforming) would apply to the sign in dispute because each such provision has language similar to § TRANS 201.10(2)(e). See, e.g. , § TRANS 201.10(2)(a) (referring to the time the applicable state law became effective), (d) (referring to the effective date of the state law). If Lamar's view is accepted, all nonconforming signs erected after March 18, 1972 would necessarily violate the conditions required for lawful maintenance and continuation of nonconforming signs under Wisconsin law. Sec. TRANS 201.10(2). So, § TRANS 201.10(2) would cease to provide for the lawful maintenance and continuation of nonconforming signs erected after March 18, 1972, and all such signs would immediately be subject to removal. But, as shown, both Wisconsin and federal law provide that nonconforming signs may remain subject to various conditions. See § TRANS 201.10(2) ("In order to lawfully maintain and continue a nonconforming sign ... the following conditions apply."); Lamar I , 315 Wis. 2d 190, ¶23 ("If any of the conditions of § TRANS 201.10(2) are not met or are violated, the sign loses its lawful nonconforming status, is an illegal sign, and is subject to removal without compensation."); see also Meredith Outdoor Advert., Inc. v. Iowa Dep't of Transp. , 648 N.W.2d 109, 117-18 (Iowa 2002) ("Under the federal regulations, nonconforming signs may remain in existence if the signs remain in substantially the same condition.... The states were explicitly directed to establish their own standards to differentiate a substantial change from customary maintenance.... By permitting only customary maintenance, the obvious purpose of the beautification act was to eventually weed out nonconforming signs."). For those reasons, Lamar's argument leads to an absurd result that cannot be reconciled with Wisconsin and federal law.
¶42 If the first absurd result advanced by Lamar does not apply, the second, equally absurd result which must flow from Lamar's interpretation of the phrase "the effective date of the state law" is that nonconforming signs erected after March 18, 1972, will not be subject to any legal restrictions. As discussed earlier, Wisconsin sign law requires that it be construed consistent with federal law, and federal law demands the removal of nonconforming signs that have been substantially changed. The federal regulations governing nonconforming signs provide that:
In order to maintain and continue a nonconforming sign ...:
....
[t]he sign must remain substantially the same as it was on the effective date of the State law or regulations.... Each State shall develop its own criteria to determine when customary maintenance ceases and a substantial change has occurred which would terminate nonconforming rights.
23 C.F.R. 750.707(d)(5). Wisconsin sign law's prohibition against enlargement of nonconforming signs and the corresponding requirement for removal of those signs is consistent with that federal directive. See WIS. STAT. § 84.30(12) (authorizing and directing department to seek agreement that § 84.30 conforms with federal law); WIS. ADMIN. CODE § TRANS 201.01 ("This chapter shall be interpreted consistently with the requirements of the [federal Highway Beautification Act] regulations."); § 750.707(a) ("The provisions of § 750.707 apply to nonconforming signs which must be removed under State laws and regulations implementing [the federal Highway Beautification Act.]" (emphasis added) ), (d)(5). If the DHA's position is not accepted, and WIS. ADMIN. CODE § TRANS 201.10(2)(e) does not apply, not only is there no prohibition against enlarging the sign, but also there is no prohibition against Lamar otherwise changing the sign as it pleases, and that result also cannot be reconciled with Wisconsin and federal law. In other words, Lamar's construction does not produce "an effectual piece of legislation in harmony with common sense and sound reason." DaimlerChrysler , 299 Wis. 2d 1, ¶10 (quoting Busch , 217 Wis. 2d at 441 ).
¶43 Two other structural and contextual considerations further support the DHA's interpretation. First, WIS. ADMIN. CODE ch. TRANS 201 does not distinguish between the different ways in which a sign might become nonconforming. See § TRANS 201.10(1) ("Nonconforming signs, as defined by s. 84.30(5), Stats., shall be eliminated."), (2) ("In order to lawfully maintain and continue a nonconforming sign."). This language leads to the conclusion that ch. TRANS 201 is intended to cover all nonconforming signs, not merely those nonconforming signs erected prior to March 18, 1972, as Lamar contends.
¶44 Second, as noted, the Wisconsin statutory scheme refers to compliance with federal law, see WIS. STAT. § 84.30(12), and the Department's rules instruct that "[t]his chapter shall be interpreted consistently with the requirements of the 23 USC 131 federal regulations related to outdoor advertising control at 23 CFR Part 750." WIS. ADMIN. CODE § TRANS 201.01. Section TRANS 201.10 closely tracks the federal regulation concerning nonconforming signs, which expressly discusses the situation in which a sign "later fails to comply with State law or State regulations due to changed conditions." 23 C.F.R. § 750.707(b).[13] As an example of "changed conditions," the regulation refers to "signs lawfully erected on a secondary highway later classified as a primary highway"-a close analogue to the present case. Sec. 750.707(b). Because that is one example of a "changed condition," it reasonably follows that another example of a changed condition that causes a sign to no longer comply with a state law is when, as here, the highway adjacent to the sign becomes an interstate. Therefore, in order for Wisconsin law to cover this situation and remain consistent with federal regulations as discussed earlier, the phrase "the effective date of the state law" must be interpreted in this case as referring to the date on which the applicable statutory provision rendered the sign nonconforming in January 1996.
¶45 Lamar suggests that the legislature and the Department had a rational basis for giving preferential treatment to currently nonconforming signs erected after March 18, 1972. Lamar asserts that it paid valuable consideration for the sign and claims it had reason to believe the sign could be maintained indefinitely. Lamar also casts itself as the victim of government overreach, stating that the sign became nonconforming not because of something that Lamar did, but because of governmental action.
¶46 Lamar does not provide any support for these propositions, and we are not persuaded. In fact, the statutory scheme and administrative rules strongly suggest that all nonconforming signs, including the sign at issue in this case, are intended to be removed. See WIS. STAT. § 84.30(5)(a) ("Signs outside of business areas which are lawfully in existence on March 18, 1972 but which do not conform to the requirements herein are declared nonconforming and shall be removed by the end of the 5th year from said date.") (emphasis added), (5)(b) ("A sign lawfully erected after March 18, 1972 and which subsequently does not conform to this section shall be removed by the end of the 5th year after it becomes nonconforming.") (emphasis added). In this respect, neither the Wisconsin statutory scheme nor the administrative rules distinguish or otherwise suggest a legislative preference for nonconforming signs erected after March 18, 1972 as Lamar asserts. In addition, contrary to Lamar's assertions, this nonconforming sign might have been maintained indefinitely pursuant to Wisconsin law-as long as Lamar did not violate the applicable administrative regulations such as the prohibition against enlargement of the sign. It was Lamar's actions in violation of Wisconsin law that caused the sign to become illegal and subject to removal.
¶47 For the foregoing reasons, we conclude that WIS. ADMIN. CODE § TRANS 201.10(2)(e) applies to this sign, and Lamar was obligated to obey the rule requirements.
3. Lamar Violated the Rule After the Sign Became Nonconforming.
¶48 So, the questions remain, what is the "state law" that applies in the present case, and when was its "effective date" so as to render the sign nonconforming. For the reasons discussed earlier regarding how the sign became nonconforming, we conclude that the applicable state law is WIS. STAT. § 84.30(3)(e),[14] and that it rendered the sign nonconforming in January 1996. From that date, Lamar was obligated to respect the conditions listed in WIS. ADMIN. CODE § TRANS 201.10(2) to lawfully maintain and continue the nonconforming sign.
¶49 We also conclude that Lamar violated WIS. ADMIN. CODE § TRANS 201.10(2)(e) when it placed extensions on the sign starting in 2007 because those placements run right into the teeth of the prohibition against enlarging signs. Sec. TRANS 201.10(2)(e). As we have noted above, the record contains substantial evidence to support the DHA's factual conclusion that Lamar enlarged the sign after January 1996.
¶50 To the extent that Lamar disputes the meaning of the term "enlarge," Lamar is wrong. In its brief in this court, Lamar alludes to an idea that an extension, although it literally enlarges a sign, is de minimis and does not constitute an enlargement. That argument ignores the plain meaning of "enlarge." "Enlarge" is not defined in the applicable statutes or regulations, but we may refer to a dictionary to establish its common, nontechnical definition. Rouse v. Theda Clark Med. Ctr., Inc. , 2007 WI 87, ¶21, 302 Wis. 2d 358, 735 N.W.2d 30. "Enlarge" means "to make larger: increase in quantity or dimension: extend in limits." Enlarge , WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1993). An extension undoubtedly makes a sign bigger and thus "enlarges" the sign within the meaning of WIS. ADMIN. CODE § TRANS 201.10(2)(e).
¶51 Lamar's brief in this court also suggests that an extension is separate from a sign face, and only enlarging a sign face is prohibited. We reject this argument because it ignores the statutory definition of "sign." A "sign" is:
[A]ny outdoor advertising sign, display, device, notice, figure, painting, drawing, message, placard, poster, billboard, or other thing, which is designed, intended, or used to advertise or inform, any part of the advertising or informative contents of which is visible from any place on the main-traveled way of any portion of an interstate highway or primary highway.
WIS. STAT. § 84.30(2)(j). Although the definition does not refer to "extensions," it includes any "other thing" that displays "any part of the advertising or informative contents." An extension fits comfortably within that definition.
¶52 Because Lamar violated WIS. ADMIN. CODE § TRANS 201.10(2)(e), it failed to lawfully maintain and continue its nonconforming sign. Therefore, the sign lost its nonconforming status and became an illegal sign subject to removal. See WIS. ADMIN. CODE § TRANS 201.09 ("[A]ny nonconforming sign which subsequently violates s. 84.30, Stats., or these rules, shall be subject to removal as an illegal sign."); see also Lamar I , 315 Wis. 2d 190, ¶23.
4. Wisconsin Act 320 Does Not Govern the Present Appeal.
¶53 The parties also dispute the applicability of a recent enactment, 2017 Wisconsin Act 320. The Act created WIS. STAT. § 84.30(5)(br), which provides, in pertinent part:
2. Notwithstanding par. (a) or (b), signs described in sub. (3) (a), (d), (e), (f), or (h) that were lawfully erected but that no longer conform to applicable requirements are, upon notice by registered mail from the department to the sign owner, declared nonconforming but are not subject to removal, except as provided in subds. 4. and 5.
3. Subject to subd. 4., a sign described in subd. 2. shall remain substantially the same as it was on the date it became nonconforming. To allow a sign described in subd. 2. to exist, to perform customary maintenance on such a sign, or to change the advertising message on such a sign, does not constitute a violation of sub. (3) or (4).
4. Except as provided in this subdivision, to make a substantial change to a sign described in subd. 2. or to erect additional signs shall constitute a violation of subs. (3) and (4). In determining whether a change to a sign constitutes a violation of sub. (3) or (4), the department may not consider any changes to that sign that no longer exist. If the department determines that a change to a sign constitutes a violation of sub. (3) or (4), the department shall notify by registered mail the sign owner and the owner of the property upon which the sign is located of the alleged violation. If the alleged violation is remedied within 60 days of receipt of the notice under this subdivision, the activity does not constitute a violation of sub. (3) or (4).
Section 84.30(5)(br)2.-4. The Act provides that it "first applies to nonconforming signs in existence on the effective date of this subsection." 2017 Wis. Act 320, § 2(1). Lamar argues that, because the sign at issue was in existence on the effective date of the Act, newly enacted § 84.30(5)(br) controls the present appeal. We disagree.
¶54 We observe that the Act first applies to nonconforming signs that existed on the effective date of the new provision, which was April 18, 2018. The Act does not state that the provision applies to all signs, nor does it state that it applies to signs that had previously lost nonconforming status. Additionally, the legislature did not include any language indicating that it intended WIS. STAT. § 84.30(5)(br) to apply to sign removal proceedings commenced prior to the effective date. See Matthies v. Positive Safety Mfg. Co. , 2001 WI 82, ¶15, 244 Wis. 2d 720, 628 N.W.2d 842 ("Legislation presumably operates prospectively, not retroactively, 'unless the statutory language reveals by express language or necessary implication an intent that it apply retroactively.' " (quoting Chappy v. LIRC , 136 Wis. 2d 172, 180, 401 N.W.2d 568 (1987) ) ). Therefore, the new provision could apply to Lamar's sign only if, as of April 18, 2018, the sign was a nonconforming sign.[15] Because we have concluded that the sign lost its nonconforming status and became subject to removal as an illegal sign when Lamar added extensions starting in 2007, the new provision is inapplicable.
¶55 Similarly, we are not persuaded by Lamar's argument that, pursuant to Act 320, the Department was prohibited from considering evidence of the extensions because the sign had been restored to its legally permitted size before the Department issued the removal order. The argument fails because it presumes the applicability of the Act. The provision that prohibits the Department from considering changes that no longer exist, like the rest of the Act, first applies to nonconforming signs in existence on the effective date of the Act. In other words, the Act did not transform illegal signs in existence on the effective date of the Act into nonconforming signs.
¶56 We now consider Lamar's argument that it had a statutory right to cure the violation.
IV. Lamar Does Not Have a Statutory Right To Cure the Violation.
¶57 Lamar next argues that the enlargement of the sign does not control the result in this case because WIS. STAT. § 84.30(11) provides a right to cure that violation. As we have noted, the sign was restored to its previously permitted size before the Department issued the removal order. According to Lamar, any prior enlargement was cured and, therefore, the removal order was invalid. We reject this argument.
¶58 WISCONSIN STAT. § 84.30(11) provides, in pertinent part:
Any sign erected in an adjacent area after March 18, 1972, in violation of this section or the rules promulgated under this section, may be removed by the department upon 60 days' prior notice by registered mail to the owner thereof ... unless such sign is brought into conformance within said 60 days.
Sec. 84.30(11) (emphasis added).[16]
¶59 The parties dispute whether WIS. STAT. § 84.30(11) provides a right to cure for "[a]ny sign ... in violation of this section or the rules promulgated under this section," or only for "[a]ny sign erected ... in violation of this section or the rules promulgated under this section." Sec. 84.30(11) (emphasis added). According to Lamar, the meaning of § 84.30(11) is that "the right to cure applies to signs that were lawfully erected and were compliant, when erected, but subsequently became noncompliant." In Lamar's view, the "violation" phrase does not modify the "erected" phrase, but instead modifies "[a]ny sign." The DHA argues that the "violation" phrase modifies the "erected" phrase.
¶60 "Our interpretation of the statutory language begins with an examination of its syntax." S.A.M. v. Meister , 2016 WI 22, ¶29, 367 Wis. 2d 447, 876 N.W.2d 746. We must determine whether the "violation" phrase modifies the "erected" phrase or "[a]ny sign." We agree with the DHA and conclude that WIS. STAT. § 84.30(11) provides a right to cure only to those signs "erected ... in violation of this section or the rules promulgated under this section."
¶61 First, we observe that a plain reading of WIS. STAT. § 84.30(11) supports the DHA's interpretation. The "violation" phrase appears immediately after the "erected" phrase, which strongly suggests that the "violation" phrase modifies the "erected" phrase. Similarly, we observe that the "erected" phrase and the "removed" phrase both use verbs indicating that the "sign" is the object of those verbs. The "violation" phrase uses the preposition "in" instead of a verb. The use of a preposition suggests that the "violation" phrase functions as an adverb modifying "erected." We conclude that, if the legislature wished to indicate that the "violation" phrase also modified the object "sign," it would have chosen to use a verb instead of an adverbial phrase.
¶62 Structural considerations further support the DHA's interpretation. For example, the right to cure specifically requires that the sign owner must bring the sign "into conformance" within 60 days. WIS. STAT. § 84.30(11). However, a nonconforming sign, by definition, cannot be brought "into conformance." A sign that is "erected ... in violation," on the other hand, can be brought "into conformance." Accordingly, we conclude that the right to cure provided for in § 84.30(11) applies only to signs "erected ... in violation" of § 84.30 or its related administrative rules.
¶63 We do not accept Lamar's arguments to the contrary.
¶64 Lamar asserts that the commas around the "violation" phrase are off-setting commas, meaning that the referent for the "violation" phrase is "[a]ny sign." Lamar cites Liebovich v. Minnesota Ins. Co. , 2008 WI 75, 310 Wis. 2d 751, 751 N.W.2d 764, where our supreme court interpreted an insurance contract containing two similar phrases with differently placed commas, as follows: "Injury, other than bodily injury, arising out of one or more of the following offenses" and "[i]njury, including bodily or mental harm arising out of any of the following acts." Id. , ¶¶30-31. The court concluded that in the first phrase, "arising out of" modified "[i]njury," and in the second phrase, "arising out of" modified "bodily or mental harm." Id.
¶65 We conclude that Liebovich is inapposite. There, the court had two similar phrases with different comma placements that the court could compare to ascertain meaning. Lamar has not cited another provision in WIS. STAT. § 84.30 with different comma placements that would lead us to conclude its interpretation is correct.
¶66 Lamar also contends that there is a rational basis for nonconforming signs erected after March 18, 1972 to receive preferential treatment in the manner advanced by Lamar and, therefore, owners of such signs have a right to cure alleged violations. It may, or may not, be that there is a rational basis to provide a right to cure for these signs and not nonconforming signs erected prior to March 18, 1972, but that is relevant only if the law actually provides for such preferential treatment. However, as we have discussed, the Wisconsin statutory scheme and the administrative rules do not suggest any legislative preference for nonconforming signs erected after March 18, 1972 that leads to the result asserted by Lamar. Lamar does not cite any authority to support its contrary claim, and we decline to read any such preference into WIS. STAT. § 84.30(11). Moreover, the inclusion of the date in § 84.30(11) better comports with the DHA's interpretation than Lamar's interpretation. Section 84.30(11) is reasonably read to provide a right to cure for signs that were erected illegally after the statute took effect on March 18, 1972, but only where the violation is curable and the sign can be altered to conform to the statutory requirements.
¶67 Furthermore, contrary to Lamar's assertions, the DHA's interpretation does not provide an incentive for sign owners to purposefully erect signs illegally. Lamar argues that the DHA's interpretation is unreasonable because sign owners who legally erect their signs and subsequently modify them illegally do not get a right to cure, while sign owners who illegally erect their signs do get a right to cure. We reject this argument because a separate rule addresses the situation where a sign owner has made changes to a legally erected and conforming sign that result in a violation of WIS. STAT. § 84.30 or the Department's rules. See WIS. ADMIN. CODE § TRANS 201.08(1) ("Any sign which is found to be in non-compliance will be required to be altered to conform, or removed, at the expense of the owner thereof."). This language is reasonably interpreted to mean that, when a sign owner has legally erected a sign and subsequently modified the sign in a way that violates § 84.30 or the Department's rules, the Department shall require the sign owner to alter the sign to conform, i.e., provide the sign owner a right to cure. If the sign owner fails to alter the sign to conform, the Department can order the sign removed at the owner's expense. Thus, the Department's rules address non-compliant signs that can be made to conform , and the rules provide those sign owners with a right to cure. Lamar's sign, as we have discussed, can never be made to conform so a different regulatory approach applies to Lamar's sign at issue in this case.
¶68 Lamar also points out two potential problems with the DHA's interpretation. First, Lamar notes that WIS. ADMIN. CODE § TRANS 201.035(7) refers to WIS. STAT. § 84.30(11).[17] According to Lamar, the internal reference to § 84.30(11) means that § 84.30(11) also applies to lawfully erected signs because a sign whose permit expired was lawfully erected. However, it does not necessarily follow from this internal reference that § 84.30(11) applies to all lawfully erected signs. Rather, "in accordance with s. 84.30 (11), Stats.," is reasonably read to refer only to the notification procedure described in § 84.30(11). Thus, if a sign owner fails to renew a permit, the Department must provide 60 days' prior notice by registered mail. It is reasonable for the legislature to provide a particular procedure for the particular problem of a lawfully erected sign with an expired permit that is different from the procedure applicable to lawfully erected signs with different problems that arose after the time the sign was erected. In sum, this internal reference is not enough to convince us that Lamar's construction of § 84.30(11) is correct, especially given the structural issues that Lamar's own interpretation creates.
¶69 Next, Lamar argues that the DHA's interpretation deprives the DHA of authority in the present case. Lamar points to WIS. STAT. § 84.30(18), which provides that "[h]earings concerning sign removal notices under sub. (11) or the denial or revocation of a sign permit or license shall be conducted before the division of hearings and appeals as are hearings in contested cases under ch. 227." Sec. 84.30(18). However, there are alternative grounds for the DHA's authority. Pursuant to WIS. STAT. § 227.42(1), in addition to any other right provided by law, any person filing a written request with an agency for a hearing will have the right to a hearing that must be treated as a contested case if:
(a) A substantial interest of the person is injured in fact or threatened with injury by agency action or inaction;
(b) There is no evidence of legislative intent that the interested is not to be protected;
(c) The injury to the person requesting a hearing is different in kind or degree from injury to the general public caused by the agency action or inaction; and
(d) There is a dispute of material fact.
Sec. 227.42(1)(a)-(d).
¶70 Each criterion in WIS. STAT. § 227.42(1) is satisfied here. First, the Department's action threatens injury to Lamar's substantial interest in maintaining its property rights in the sign. Second, the legislative and regulatory scheme discussed earlier indicates that owners of nonconforming signs receive legal protections. Third, the injury to Lamar is not to the general public, or to sign owners generally. Rather, the injury is specific to Lamar because it involves the removal of Lamar's previously nonconforming sign. Finally, Lamar disputed the material fact of whether the sign was enlarged. Accordingly, Lamar was entitled to a hearing from the Department pursuant to § 227.42. Moreover, the DHA responded to Lamar's argument concerning its authority by arguing that § 227.42 provides an alternative grounds for DHA's jurisdiction. Lamar failed to address the argument in its reply brief in this court and, therefore, conceded the issue. See DNR v. Building & All Related or Attached Structures Encroaching on Lake Noquebay Wildlife Area , 2011 WI App 119, ¶21, 336 Wis. 2d 642, 803 N.W.2d 86.
¶71 In sum, we conclude that the DHA has the correct reading of WIS. STAT. § 84.30(11), and Lamar does not have a statutory right to cure its violation of WIS. ADMIN. CODE § TRANS 201.10(2)(e).
¶72 We now turn to the question of whether the Department was required to engage in formal rulemaking when it changed how it would enforce the applicable statutory and rule requirements.
V. The Department Was Not Required to Engage in Formal Rulemaking.
¶73 Lamar argues that the Department has treated extensions on signs inconsistently and that sign owners previously received a 60-day right to cure violations related to the use of extensions. According to Lamar, the Department engaged in unlawful rulemaking when it revised its application and enforcement of the statutory and rule requirements. Lamar has presented ample evidence that the Department's application and enforcement have indeed changed, and the DHA does not dispute this point. Nevertheless, we conclude that the Department was not required to engage in formal rulemaking.
A. Standard of Review, Rulemaking, and Exceptions to Rulemaking.
¶74 This issue requires us to determine whether the Department's revised application and enforcement of WIS. STAT. § 84.30(11) constituted a "rule" such that the Department was required to follow administrative rulemaking requirements.
¶75 "Rule" is statutorily defined as "a regulation, standard, statement of policy, or general order of general application which has the effect of law and which is issued by an agency to implement, interpret, or make specific legislation enforced or administered by the agency." WIS. STAT. § 227.01(13). Whether the Department's action constitutes a "rule" within the meaning of § 227.01(13) presents a question of law that we review de novo. See Cholvin v. DHFS , 2008 WI App 127, ¶11, 313 Wis. 2d 749, 758 N.W.2d 118.
¶76 Of importance to the analysis is that an agency is not required to promulgate a rule if its "revised application of [a] statute[ ] serves to bring its practices into conformity with the plain meaning of the statute." Schoolway Transp. Co. v. DMV , 72 Wis. 2d 223, 236, 240 N.W.2d 403 (1976). When confronted with an error of interpretation, an agency is "duty-bound to cease its prior practice" and "adhere to the terms of the statute." Id. at 229. If an agency is merely following its duty to administer the statute according to its plain terms, the agency's action is "not a regulation, standard, statement of policy or general order ... [nor] is it a statement of general policy or interpretation of a statute," and the agency need not comply with formal rulemaking procedures. Id. at 236. We refer to this exception as the error-correcting exception.
B. The Error-Correcting Exception Applies.
¶77 Lamar argues that the Department's revised application and enforcement of the right to cure in WIS. STAT. § 84.30(11) constituted a rule. Specifically, Lamar contends that the Department formerly provided sign owners with an opportunity to cure violations related to the placement of extensions on signs. We reject this argument because the Department's revised application and enforcement of § 84.30(11) fits within the error-correcting exception. Schoolway , 72 Wis. 2d at 236. As we have already noted, the plain language of § 84.30(11) means that it applies only to signs "erected ... in violation" of the statutory and rule requirements. Therefore, Lamar never had the statutory right to cure the violation, and Lamar cannot now take advantage of a statutory right it never possessed. Under Schoolway , regardless of whether the Department previously provided a right to cure for violations related to extensions, the Department was "duty-bound to cease its prior practice" and "adhere to the terms of [ WIS. STAT. § 84.30(11) ]." Id. at 229. Accordingly, the Department was not required to promulgate a rule.
¶78 Lamar also contends that the Department revised its unwritten interpretation of "enlarge" so that extensions are presently viewed as enlargements. WIS. ADMIN. CODE § TRANS 201.10(2)(e). Lamar asserts that, to enforce this changed view, the Department was required to issue a rule clarifying that it now views extensions as enlargements. We are not persuaded.
¶79 Lamar admits that a consequence of adding an extension to a sign prior to 1999 was an order from the Department requiring removal of the extension within 60 days. So, even then, the Department took the position that an extension enlarged a sign, and Lamar points to nothing in the record to show the Department's definition of "enlarge" has changed over the years. Instead, as just discussed, the Department has only changed how it reacts to a sign enlarged through the placement of extensions. As a result, it does not follow that the Department has changed its interpretation of "enlarge." Therefore, the Department was not required to engage in rulemaking.
¶80 We now consider Lamar's final argument which concerns the common law doctrine of nonconforming uses.
VI. The Common Law of Nonconforming Uses Does Not Apply.
¶81 Lastly, Lamar argues that the common law of nonconforming uses permits sign owners to enlarge nonconforming signs. Lamar contends that only an enlargement which changes the use of the sign invalidates the nonconforming use. Therefore, according to Lamar, the sign retained its nonconforming status because the addition of an extension did not change the use. We disagree.
¶82 Lamar relies on two cases that address the doctrine of nonconforming uses as it relates to zoning ordinances, Waukesha Cty. v. Seitz , 140 Wis. 2d 111, 409 N.W.2d 403 (Ct. App. 1987) [hereinafter Seitz I ] and Waukesha Cty. v. Pewaukee Marina, Inc. , 187 Wis. 2d 18, 522 N.W.2d 536 (Ct. App. 1994) [hereinafter Seitz II ]. In Seitz I , a marina owner had a valid nonconforming use and subsequently expanded his pier facilities and dry-docking business. Seitz I , 140 Wis. 2d at 117. The court held that an increase in volume, intensity, or frequency of use, standing alone, is not enough to invalidate a nonconforming use. Id. The increase must be coupled with some element of identifiable change or extension. Id. In Seitz II , the marina owner overstepped in that he not only expanded and enlarged the marina, but also he began to offer new services, such as a retail store. Seitz II , 187 Wis. 2d at 27. The court clarified that, "if there is an identifiable change in the use, the enlargement is illegal. If the expansion is a result of a mere increase in the historically allowed use, the enlargement or expansion will be allowed subject to regulatory markers."Id.
¶83 Seitz I and II involved the common law doctrine of nonconforming use, which "is implicated when lawful uses of land are made unlawful by a change in zoning regulations." Golden Sands Dairy LLC v. Town of Saratoga , 2018 WI 61, ¶21, 381 Wis. 2d 704, 913 N.W.2d 118. In the present case, we are not concerned with a lawful use of land made unlawful by a change in zoning regulations. Rather, this case is about a sign that no longer conformed to the requirements of a statutory and regulatory scheme of federal and state law that expressly prohibited the enlargement of nonconforming signs. The Department, pursuant to its statutory authority, issued a rule that governs the present case, and the case law presented by Lamar does not lead to the conclusion that we must turn to common law doctrines. Rather, the statutory scheme and administrative rules clearly control.
¶84 Finally, Lamar claims that WIS. ADMIN. CODE § TRANS 201.10(3) specifically provides that the common law of nonconforming uses is applicable. Section TRANS 201.10(3) reads, in pertinent part:
(3) Since the provisions of sub. (2) reflect the law of this state with respect to the treatment of nonconforming uses and the derivative policy of the department with respect to nonconforming signs, the adoption of sub. (2) shall not be construed to affect the applicability or validity of such state law or derivative policy prior to the adoption of sub. (2).
Sec. TRANS 201.035(7).
¶85 We conclude that this provision means that WIS. ADMIN. CODE § TRANS 201.10(2) reflected the Department's understanding of the law of nonconforming uses, and that the Department derived its policy concerning nonconforming uses with that understanding in mind. It does not mean that, where the common law doctrine of nonconforming uses contradicts the Department's rules, the common law overrides the rules. Furthermore, we note that the nonconforming use decisions that Lamar relies on postdate the adoption of § TRANS 201.10(2), meaning that the Department's rules could not be derived from those decisions.
CONCLUSION
¶86 For the foregoing reasons, we affirm.
By the Court. -Order affirmed.
Not recommended for publication in the official reports.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted. The relevant provisions of Wis. Stat. § 84.30 have remained the same from the time the sign was erected in 1991 until the contested case hearing. That statute was amended while this appeal was pending but, as discussed below, those changes to § 84.30 do not apply to this case.

For the purposes of clarity and consistency, throughout this Opinion we use the word "nonconforming" to mean "legal but nonconforming."

All references to the Wisconsin Administrative Code are to the February 2013 version unless otherwise noted.

In light of our decision on the sign removal order, the DHA order denying the permit to remove vegetation will not be mentioned further.

Lamar's brief in this court asserts that the measurements taken near the time of the removal order are invalid or insufficient because the Department reported that the south sign face measured 14 feet by 48 feet, but did not provide testimony as to the north sign face. This assertion is untenable. Photographs in the record show that the north and south sign faces have the same dimensions when the extensions are not present.

All references to the U.S. Code are to the 2012 version unless otherwise noted.

We observe that Wis. Stat. § 84.30(5)(bm) prohibits enlarging "[s]igns lawfully erected, but which do not conform to the requirements of sub. (3)(c)." However, the parties do not dispute that § 84.30(5)(bm) applies only to on-premise signs, and the sign at issue is an off-premise sign. Therefore, our discussion does not address § 84.30(5)(bm).

Thus, the sign at issue has remained standing for over twenty years after it became nonconforming in 1996.

The federal Highway Beautification Act of 1965 is codified at 23 U.S.C. § 131.

All references to the Code of Federal Regulations are to the 2018 version unless otherwise stated.

Also, Wis. Admin. Code § TRANS 201.02(5) defines "illegal sign" as:
[A] sign erected after March 18, 1972, without a permit, a sign that is erected or maintained in a manner that violates any requirement of a permit, this chapter, or s. 84.30, Stats., a nonconforming sign that has lost its nonconforming status, or a grandfathered sign that has lost its grandfathered status.
Sec. TRANS 201.02(5).

The parties do not contend that Wis. Admin. Code § TRANS 201.10(2)(e) has a separate requirement that the sign "not be enlarged" regardless of "the effective date of the state law." Instead, the parties treat the phrase "may not be enlarged" as referring to a specific manner in which the sign will not be "substantially the same," and we will construe the rule in that manner.

23 C.F.R. § 750.707(b) reads, in pertinent part:
(b) Nonconforming signs. A nonconforming sign is a sign which was lawfully erected but does not comply with the provisions of State law or State regulations passed at a later date or later fails to comply with State law or State regulations due to changed conditions. Changed conditions include , for example, signs lawfully in existence in commercial areas which at a later date become noncommercial, or signs lawfully erected on a secondary highway later classified as a primary highway .
Sec. 750.707(b) (emphasis added).

As read in conjunction with Wis. Stat. § 84.30(2)(b) (defining "business area").

The establishment of an effective date, standing alone, does not determine whether a statute will apply retroactively because all statutes have effective dates. See Salzman v. State , 168 Wis. 2d 523, 529, 484 N.W.2d 337 (Ct. App. 1992). Here, however, the plain language of the enactment requires that a sign must have been nonconforming as of that effective date. Accordingly, the statute contains a clear expression of intent not to be applied retroactively, i.e., to signs that lost nonconforming status prior to the effective date.

For purposes of consistency and readability, we refer to the phrases within this provision as follows: "[E]rected in an adjacent area after March 18, 1972" as the "erected" phrase; "in violation of this section or the rules promulgated under this section" as the "violation" phrase; "may be removed by the department" as the "removed" phrase.

Wisconsin Admin. Code § TRANS 201.035(7) provides, in pertinent part:
The permit for a sign shall expire upon the due date for payment unless the annual fee for the sign has been paid. Signs with expired permits are subject to removal 60 days from the due date specified in the notice. The department shall notify a sign owner that a sign is subject to removal under this section in accordance with s. 84.30 (11) , Stats.
Sec. TRANS 201.035(7) (emphasis added).